ROGERS, J.
Plaintiff is a dealer in shoes in the city of New Orleans. Defendant is a nonresident corporation engaged in the manufacture of shoes. Alleging nonperformance by defendant of contracts for the sale and delivery of shoes, plaintiff instituted this action, by attachment and garnishment, for damages for the breach thereof. Plaintiff averred said damages to be the difference between the contract price and the market price of the merchandise at the date of the alleged breach. The action in rem became an action in personam when defendant, through counsel, appeared in court to defend the suit.
Defendant first filed o an exception of no right and no cause of action, and thereafter, with reservation of said exception, filed its answer and a reconventional demand for damages for an alleged loss suffered- by it by reason of the cancellation by plaintiff of certain orders for shoes given by him.
The exception of no right and no cause of action was referred to the merits. Other than this no action appears to have been had thereon, since the judgment on the merits, without any reference whatever to the exception, was in favor of plaintiff for the full amount claimed by him and for the dismissal of the defendant’s reconventional demand. Erom this judgment defendant is prosecuting the x>resent appeal.
Although the issue raised by the exception of no right and no cause of action does not appear to have been directly passed upon by the lower court, we take it that it may be considered to have been impliedly overruled and effectively disposed of by the judgment in plaintiff’s favor on the merits.
In this 'court the learned counsel for defendant have contended vigorously that the exception was legally sound and should have been sustained. Their argument is that the only action, if any, plaintiff had against defendant was an action for the loss of the profit he would have made by reselling the shoes, and not one for the difference between the price at which he purchased the goods and the market price thereof at the date the contracts were breached.
In an action against a seller for not delivering the goods contracted for, the universal rule is that the measure of damages is the difference between the contract price and market value. Benjamin on Sales, pp. 618, 727 ; 2 Sedgwick on Damages (9th Ed.) § 734, p. 1530; Thompson v. Howes, 14 La. Ann. 45; Southern Cotton Oil Co. v. Shreveport Cotton Oil Co., 111 La. 387, 394, 35 South. 610; Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 South. 646; Oil City Iron Works v. S. Bender Supply Co., 147 La. 450, 85 South. 201.
While admitting the correctness, in general, of the rule stated, counsel for defendant argue that it is inapplicable to the instant case, because the shoes which defendant had agreed to deliver to plaintiff were of a peculiar quality and style, “stamped-with the peculiarities given them by the whim of fashion, and sold from particular samples made exclusively by one manufacturer,” and, therefore no general market and no market price existed for said merchandise; that, if plaintiff, as a jobber, is entitled to any damages at all, they are the difference between the price at which he had contracted to purchase the goods and the price at which he had agreed to sell them; that, as he has not averred he could, or would, have resold *62 them, he has not shown any injury as would entitle him to an award for damages, nor could he recover for the market price where there was no market price.
In support of their argument, counsel for defendant have cited article 1934, R. C. C., and numerous decisions of this court interpreting the text thereof.
The article of the Code relied on would seem to be against rather than in favor of the argument presented on behalf of defendant. It reads (in the first paragraph):
“Where the object of the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications.” (Writer’s italics.)
It will be observed it does not read “or” the profit of which the creditor has been deprived, nor does it say that it is “the” profit of which he has been deprived, but it expressly provides for the recovery of “the loss he has sustained, and the profit of which he-has been deprived,” under the exceptions and modifications noted. (Writer’s italics.)
The article further provides:
“When the debtor has been guilty of .no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract.”
This is a statement of the universal rule, under the application of which the courts have held that the damages contemplated and the loss sustained in a contract for the sale and delivery of personal property is the difference between the purchase price and the market price.
The authorities cited by defendant’s counsel to “clarify” the article of the Code are not in opposition to the foregoing exegesis. They merely uphold the correctness of the legal principle that, even where the breach arises from fraud, bad faith, negligence, or motive of interest, the debtor, though' liable both for those damages that might have been foreseen and those which are the direct and immediate consequences of his default, is liable for no more, the creditor’s full indemnity being the standard of recovery. No such issue is presented here. Plaintiff has not sought to impose a greater liability upon defendant than the breach of the contract warranted. In fact, the suit is for less than he possibly might have claimed 'by averring as an additional item of damage the loss of unrealized or anticipated profits.
We are therefore unable to hold with counsel for defendant that the exception of no right and no cause of action is well founded.
Passing on to the consideration of the merits of the ease, we find the facts to be substantially as follows:
Plaintiff, for many years, had carried on a shoe business in the cities of New Orleans and •Shreveport. In the former he had operated as a wholesaler and jobber under his own name: and, in the latter, he was interested in, or owned, the Boston Shoe Store, a retail business. For more than 20 years plaintiff had handled shoes manufactured by defendant, and during this .period had purchased from said manufacturer shoes to the value of three-quarters of a million of dollars, all of which he had paid for in full.
In transacting the business plaintiff would send in to the defendant his orders on sheets which were numbered. On these order sheets the description of the goods purchased was set forth by stock numbers. Each order sheet bore a different number, which was the only means by which the orders could be identified after they had been given. The stock numbers remained the same, as they merely designated the character or style of the shoes ordered. It frequently happened *64 that the same stock numbers appeared on different orders.
On September 25, 1918, plaintiff forwarded to defendant order No. 1859. This was a special order of shoes for the Shreveport store, and called for shipment Janpary 1, 1919. In October, 1918, plaintiff sent in three other orders, Nos. 712, 713, and 714, also for shipment January 1, 1919. When the shipping date arrived defendant had failed to send forward the merchandise comprising these four orders. Instead of making the shipments as agreed, defendant, on said date, January 1, 1919, advised plaintiff, by letter, that it was still holding the orders; “as we have been unable to cut any more shoes up to this time * * * this order of shoes will go to the cutting room within the next two or three weeks, we think, which will make the delivery date on them well along into March.”
Defendant did not ship the goods in March, nor by Easter, and thereupon plaintiff wired defendant on April 30, 1919, as follows:
“Referring to orders 712, 713 and 714, discontinue all oxfords as season is too late and customers will not accept them, so cancel all of them.”
On the same day plaintiff by letter confirmed this telegram, stating:
“Regarding the above would state that this refers to stock Nos. 200, 201, 205 and 206.”
Defendant replied to this telegram by letter dated some six days thereafter, stating “that to cancel these orders would cause it to sustain loss.” Upon receipt of defendant’s letter plaintiff immediately wired as follows:
“Replying letter 6th rather than see you suffer any loss on our account will accept all of our orders on stock 200, 201, 205 and 206, and ask you to date these as January 1st, as season is over and will have to carry them until next spring.”
This telegram remained unanswered for four days. However, on May 13, 1919, defendant wrote that the canceled shoes had been disposed of “here on the floor at a great loss to us.” But no claim was made for the loss, and the evidence does not support the statement of immediate disposition of the shoes.
Plaintiff sent in six additional orders, which were accepted by defendant. Two of these orders called for shipment July 1, 1919. and four for shipment August 1, 1919.
No delivery of the shoes having been made by August 23, 1919, plaintiff wrote defendant calling attention to its default, and requesting that the goods be shipped without further delay. In this letter inquiry wag also made as to when shipment of order 1859 would be made.
In reply to this, defendant, by letter dated August 27, 1919, advised plaintiff that there were “no shoes due you on order No. 1859,” because of the cancellation contained in the letter of April 30, 1919; that so far as its records were concerned this order was all cleaned up; that the other six orders, “had not been started for the reason that the loss that we suffered in the eases which you canceled has made us feel that it would be very unsatisfactory to start forward these shoes and probably run the risk of these also being canceled. * * * When the cancellation came in on these shoes we had an enormous loss, and you can readily understand that this method of doing business is very unsatisfactory, and, as we have been held up very badly for three or four months, for black and brown kid leather, it would be well into the winter before any of these orders could be shipped you. We do not think it advisable to start them at this late date.”
On September 3, 1919, plaintiff wrote defendant, inclosing copy of letter of April 30, 1919, advising that order No. 1859, which was a special order, had never been canceled, and that he would expect it to be shipped. Reference was also made to the re *66 maining six orders, with the desire expressed that they be rushed and shipped “positively this month.” No reply was made to this letter.
On September 4, 1919; plaintiff again wrote, inclosing copy of letter of April 30th, reiterating that order No. 1859 had never been canceled, but only orders Nos. 712, 713, and 714.
Defendant replied to this under date of September 9, 1919, stating that—
“They had read over same carefully, hut that on receipt of letter of April 30th we worked on the assumption that all of these oxfords were too late for you on orders Nos. 712, 713, and 714 and we disposed of all of them.”
The present suit was filed September 15, 1919.
The record discloses a clear breach of contract by defendant. This is shown by the correspondence between the parties as well as by the testimony of the witnesses. Defendant has offered no justification whatever for its failure to ship the shoes which were ordered.
We are not impressed with the argument on behalf of defendant that the reference in the correspondence was solely to the stock numbers and not to the order numbers; that the order numbers were unimportant while the stock numbers were the essential thing. Both were necessary, one to identify the orders, and the other to identify the various items of the orders. It is unbelievable that experienced business men such as were in charge of defendant’s affairs could have become confused over this distinction. As a matter of fact, no such confusion existed in their minds. Plaintiff’s instructions, as contained in his telegram and letters, were clear and explicit; they left no room for doubt or dispute. Every reference in the correspondence was to the order numbers. The receipt of the orders themselves were acknowledged by the order numbers and in many cases the stock numbers were not mentioned at all.
The defense set up in the answer that plaintiff had visited defendant’s factory and witnessed a strike, and therefore was bound to know that the merchandise ordered would be subject to the delays incident to a strike, is without merit. Defendant’s visit was more than a year previous to the controversy in question. The orders were sent in and accepted many months thereafter, and were unconditional and absolute on their face. Besides, there is no evidence in the record to show that any strike was on at the time these shoes were to be manufactured and delivered.
Prom our examination of the record we are satisfied that defendant breached its contract with plaintiff for either one, or perhaps for both, of two reasons: (1) Because of the great advance in the price of shoes during the period, the market was “skyrocketing very badly” at the time; (2) defendant found it to its interest and financial advantage to cease doing business with plaintiff and to make arrangements with another customer with a larger capital and more extensive business.
Having defaulted in its contract defendant must suitably respond in damages.
We have discussed the law applicable to the case in passing upon the exception of no cause and no right of action.
Plaintiff’s claim is for the difference between the contract price and the market value of the goods at the time of the breach. It is shown by the evidence that the total contract price of the shoes was $10,555.80, the total market price was $16,678.80, the difference between the two figures being $6,123.00, which was the amount of the judgment of the lower court. The market prices of the shoes were established by the testimony of the plaintiff himself as well a,s by the testimony of several other witnesses. The only witness produced for the defendant was the *68 president of the company, who sought to make it appear that there was no advance in price. . 1-Iis testimony, however, in face of the record and the public well-known facts, is not to be relied upon. In his own letters the said president stated that the prices had advanced, or, as he put it, had “skyrocketed.” On cross-examination he admitted that leather and all materials had gone up. Plaintiff further produced the written tabulation of the witness, in which, excluding the undelivered merchandise in order No. 1859, he figured the difference in contract and market price on the remaining six orders to be $3,924. The difference in said prices of the undelivered shoes under order No. 1859 was shown to be $1,767.60. The sum of these remainders or differences is $5,691.60, agreeing substantially with the amount claimed by plaintiff. This is especially significant when it is' borne in mind that it was to the interest of the witness to minimize the damages as much as possible.
Defendant’s counsel, in their, brief, object to the consideration of this pencil memorandum on the ground that it was made during the pendency of negotiations for a compromise.
 The document was offered and admitted in evidence without objection, which disposes of the argument now made against its consideration. Beyond this, however, if timely objection had been made, it would have availed nothing, since the document would have been admissible as a statement of “an independent admission of a fact.” No inquiry was made as to any admission of liability by the witness; the only thing introduced in the evidence was the document which he had prepared, giving the figures showing the market value of the merchandise not delivered. Even under negotiations for a compromise this would be admissible.
“In civil matters it is a rule that mere proposals for a compromise or negotiations to effect one, are not generally admissible, though evidence may be given of any fact or distinct liability admitted in the.proposals, negotiations or conversations, the party sought to be affected being entitled to the benefit-of the whole conversation or proposal.” State v. Wright, 48 La. Ann. 1525, 21 .South. 160.
See, also, Delogny v. Rentoul, 2 Mart. (O. S.) 175; Agricultural Bank v. The Jane, 19 La. 1.
In 1 Wigmore’si Greenleaf on Evidence (16th Ed.) § 192, we find the following statement of the principle;
“But if the admission be of a collateral or independent fact, such as the handwriting of a party, capable of easy proof; by other means, and' not connected with the merits of the case, it is receivable though made under a pending treaty. It is the condition, tacit or express, that no advantage shall be taken of the admission, it being made with a view to, and in furtherance of, an amicable adjustment, that operates to exclude it. But, if it is an independent admission of fact, merely because it is a fact, it will be received; and even an offer of a sum by way of compromise of a claim tacitly admitted is receivable, unless accompanied with a caution that the offer is confidential.”
To the same effect, see 22 C. J. verbo Evidence, § 349.
For these reasons we see no error in the judgment appealed from, and it is accordingly affirmed.
Judgment affirmed.