135 So.2d 297 (1961)
TRI-STATE OIL TOOL COMPANY OF SOUTHERN LOUISIANA
v.
PIONEER OIL & GAS CO., Inc.
No. 130.
Court of Appeal of Louisiana, Fourth Circuit.
December 4, 1961.
*298 Phelps, Dunbar, Marks, Claverie & Sims, Charles M. Lanier, New Orleans, for plaintiff-appellee.
Cobb & Wright, Joseph V. Ferguson, II, New Orleans, for defendant-appellant.
Before SAMUEL, JOHNSON and HALL, JJ.
LUTHER E. HALL, Judge pro tern.
Plaintiff corporation, Tri-State Oil Company of Southern Louisiana, brought this suit against the defendant, Pioneer Oil and Gas Company, Inc., as the successor of Como Drilling Company, to recover the *299 sum of $6,133.89 together with interest and costs alleged to be due to plaintiff by Como Drilling Company, a partnership, for services rendered and oil well tools rented to Como Drilling Company from February 24, 1957 through March 3, 1957.
From a judgment in favor of plaintiff as prayed, defendant prosecutes this suspensive appeal.
The defendant-appellant, Pioneer Oil and Gas Company, Inc., has admitted that if Como Drilling Company is found to have been responsible to plaintiff for the payment of this sum, then it, Pioneer Oil and Gas Company, Inc., as successor in interest to Como Drilling Company may be cast in judgment for this amount.
There is no dispute that the services were rendered and the equipment furnished, and we find that the value thereof has been adequately proved.
The main contention of the defendant is that the services were not rendered for the account of Como Drilling Company but were rendered for the account of H. Curtis Plumley, Jr., the owner of the well, which was being drilled by Como Drilling Company under contract with the owner.
The record shows that the plaintiff, Tri-State, is engaged in the business of renting or furnishing with supervision special oil well tools, commonly called "fishing tools", which are used in extricating drill pipe or other materials which have become stuck or lodged in the hole and cannot be removed through normal drilling methods. One of Tri-State's customers with whom it had established a mutually satisfactory business relationship, and to whom it had on many occasions prior to the transaction in question, rented and furnished tools and services, was Como Drilling Company. Como Drilling Company was an independent concern engaged in the drilling of oil wells, mainly for its own account, although at times it drilled wells as an independent contractor for the account of others.
This litigation arose out of the following facts:
In the latter part of February 1957 Como Drilling Company was engaged in the drilling of a well known as the Leon Dupuis Well No. 1, situated in the Anse LaButte Field in Lafayette Parish, Louisiana. Sometime prior to 9:30 A.M. on Sunday, February 24, 1957, the warehouse manager of Tri-State's Lafayette Office, Mr. George Murray, received a telephone call from one Mr. J. W. Baron who identified himself as the toolpusher for Como Drilling Company on the Leon Dupuis No. 1 Well. Mr. Baron informed Mr. Murray that a blow-out had occurred in the well during the previous evening and that Tri-State's tools and services would be required to assist in recovering drill pipe that had become stuck in the hole. Mr. Murray obtained from Mr. Baron information relative to the type of pipe he was using and all of the other information he needed in order to select and assemble the proper tools and get them on location. Both parties agree that nothing was said by either one during the telephone conversation relative to the ownership of the well nor who would be responsible for payment of the rental and services. Mr. Murray testified that he did not know Mr. Baron personally but had done business satisfactorily with Como Drilling Company in the past and assumed the services were being ordered for Como's account.
Mr. Murray's assistant assembled the necessary tools and dispatched them to the well location under the supervision of one of Tri-State's fishing tool operators, Mr. Elmer Scales.
Mr. Scales and the equipment arrived at the well about 1:00 P.M. on Sunday, February 24 and Mr. Scales proceeded to set up his equipment and at approximately 3:00 P.M. that day began actual operations in the hole in an attempt to recover the stuck drill pipe.
Sometime in the late afternoon or early evening of the same day, after he had performed a substantial amount of work, Mr. Scales was made aware that while the work had been ordered by Como Drilling Company, *300 the well was being drilled by Como under contract with the well owner, one H. Curtis Plumley, Jr., and that a dispute had arisen between Como and Plumley as to who should be responsible, under the drilling contract, for the fishing tools and services that were being provided. He was approached at that time by representatives of Como who instructed him that "the job is not on us". Later he was instructed by Plumley's representative that "the job is not on us". Neither Como nor Plumley ordered him to cease operations and get off the job, and Mr. Scales whose job and authority did not extend beyond supervision of the actual fishing operations and who was unconcerned as to whom should pay, continued with the work with the tacit acquiescence of both Como and Plumley and without hindrance from either until the afternoon of March 3rd when Como abandoned the well and told him to quit. During the eight day period from February 24 to March 3, Mr. Scales had removed from the well some 4200 to 4300 feet of drill pipe belonging to Como.
The dispute between Como and Plumley as to who should be responsible for payment of Tri-State's services arose out of a clause in the drilling contract between those two parties which obligated the well owner, Plumley, upon the happening of a certain contingency, to assume responsibility for the payment of any fishing operations thereafter conducted. Como, the drilling contractor, was contending that the contingency had happened and therefore fishing operations were at the expense of the owner, Plumley, while Plumley was contending that the contingency had not happened and that Como was responsible for payment of all bills. This dispute continued long after Tri-State had completed its work, and in fact the record is unclear as to whether it has ever been definitely settled. Although it appears that the parties thereto entered into a compromise on July 30, 1957, there is testimony to the effect that the compromise was later repudiated by Plumley.
The dispute is mentioned here merely to show the actual cause of this litigation. Tri-State had nothing to do with the dispute and in fact no one in Tri-State had any knowledge thereof until it was disclosed to Mr. Scales after he had performed a substantial amount of work.
Regardless of the dispute over responsibility for payment both Como and Plumley were in agreement that the work was required.
Fundamentally, defendant's contentions are two-fold: First the contention is made that plaintiff had no right to assume that Como Drilling Company was acting for itself in engaging plaintiff's services and second the alternative contention is made that its toolpusher, Baron, had no authority from the defendant to place the order for its account and that it timely repudiated such action.
We find no merit in the first contention. While it is true that the decision to order out Tri-State's services was a joint one arrived at between Como's toolpusher, Baron, and Plumley's agent, Taylor, plaintiff when it began performance had no way of knowing this fact or of knowing of any relationship between the drilling contractor and the well owner. The testimony shows that it is customary in the oil business for toolpushers to order out materials for account of their employers, and since Como Drilling Company had previously on many occasions done business with plaintiff in a similar manner and been paid therefor without question, plaintiff had a right to assume that Baron was acting for Como and not for some undisclosed third party. And although there is testimony to the effect that Baron was without authority to bind Como in this instance, this would have no effect on the right of Tri-State since he had apparent authority. Interstate Electric Co. v. Frank Adam Electric Co., 173 La. 103, 136 So. 283; Slagle v. Peyton, 182 La. 358, 162 So. 12; Clinton Feed, Oil & Gin Plant v. Pipes, La. App., 184 So. 354.
Even if it be a fact that Como Drilling Company, through Baron, was acting as agent for the well owner, Plumley, that *301 fact was not disclosed to Tri-State and consequently does not affect Como's liability to Tri-State, since it is well settled that one acting for an undisclosed principal is himself personally liable. Magnolia Petroleum Co. v. Hawkins, 19 La.App. 821, 141 So. 389; Chappuis & Chappuis v. Kaplan, 170 La. 763, 129 So. 156; Three Rivers Hardwood Lbr. Co. v. Gibson, 181 So. 607; New Orleans Brewing Co. v. Goldstein, 12 Orleans App. 323; DeRouen v. Aiavolasiti, La.App., 121 So.2d 851.
While it is undoubtedly true that the law permits a principal to escape liability for the unauthorized acts of its agents by repudiating the action timely, we have here a question of fact. Did Como repudiate Baron's action or do anything else which would serve to relieve it of liability?
The order which Baron placed with Tri-State was merely a rental of equipment (with supervision) by the day for an indefinite time, and it is clear that either Como or Tri-State could have cancelled it at any time. It is equally clear that neither did.
All that transpired was that sometime after work was well progressed Mr. Mary, Como's supervising partner, told Scales, Tri-State's man on the job, that Como would not be responsible for payment for Tri-State's services, his reason being that Como had determined (to its own satisfaction) that the well-owner, Plumley, was responsible under the provisions of their drilling contract.
This is the only position Como ever took with Scales or with Tri-State at any time. On the other hand, Plumley informed Scales that under the drilling contract Como and not he was responsible. As stated before it is not clear that this controversy between driller and well owner has ever been settled even to this day.
Scales had nothing to do with their contract and was not called upon to decide their dispute. He had no authority to stop work so he continued it. And since the work which Scales was performing was advantageous to both the driller, Como, and the well-owner, Plumley, neither made an effort to halt it and the work progressed to completion without hindrance and with full acquiescence of both Como and Plumley.
Although defendant argues that Baron had no authority to place the order with Tri-State, the record fails to disclose that either Mr. Mary or anyone else acting for Como ever repudiated Baron's actions or even mentioned the subject of Baron's authority to Scales or anyone else in Tri-State.
In our opinion, if it accomplished anything, Como's action in trying to shift responsibility to Plumley, served no more than as a notification to Tri-State that Como had ordered the services for Plumley's account instead of its own. If that was in fact the situation the only legal consequence would be to give Tri-State the option of holding either Como or Plumley responsible. It would not relieve Como.
The jurisprudence is clear to the effect that unless notice of the fact of agency and the name of the principal is given at the time of the contract it will not be sufficient disclosure to avoid liability. The only effect of a disclosure or discovery of the fact of agency and the name of the principal after the date of the transaction is to grant the contracting party the option to hold either the agent or the principal responsible. See DeSoto Building Co., Ltd. v. Kohnstamm, Orleans No. 7627 (La.App. 1919), and other cases cited supra.
The record in our opinion does not support defendant's argument that plaintiff elected to hold Plumley instead of Como.
We find no merit in defendant's contention that the value of Tri-State's services was not sufficiently proved nor in its contention that Como Drilling Company received no benefit from the services.
For the foregoing reasons, the judgment appealed from is affirmed.
Affirmed.