REGAN, Judge.
Plaintiff, David Moore Development Company, Inc., a corporation engaged in the construction and sale of houses in the Shreveport area, instituted this suit endeavoring to recover the amount of $6,490.01 from the defendants, Higgins Industries, Inc., and General Flooring, Inc., both of whom were domiciled in New Orleans, as indemnification for expenditures made by it in repairing and replacing certain woodblock floor tile used in building some of its houses. Plaintiff explained therein that it was entitled to recover, predicated on the existence of an agreement by Higgins to assume the cost of replacing any defective tile which it supplied for use in these houses.
The defendants answered and denied that any agreement to replace the tile had been entered into. They also pleaded the terms of the invoice which accompanied the shipment of the flooring; it contained a guarantee to replace only defective material and excluded therefrom was the “ * * * loss, damages or expense directly or indirectly arising from the use of the material or from any other cause.” Defendants alternatively insisted that any damage to the tile floors was caused by the improper installation thereof by the plaintiff. In addition, the defendant Higgins reconvened for the sum of $2,594.58; representing the sale price of certain material which it sold to the plaintiff through the medium of a separate transaction.
Following a trial on the merits, judgment was rendered in favor of the plaintiff and against the defendant Higgins in the amount of $6,490.01, subject to a setoff in its favor of $2,594.58 in conformity with the prayer of its reconventional demand. Judgment was also rendered dismissing the plaintiff’s suit against General Flooring, Inc. From that judgment only the defendant Higgins has prosecuted this appeal.
The record reveals that the plaintiff had been buying wood-block flooring from Higgins for several years prior to the present controversy for use in its rather extensive residential housing development in Shreveport, Louisiana. During this period the plaintiff dealt with Higgins exclusively through the latter’s sales representative, an individual well known in the building trade as Joe Bizet, who handled the distribution of the products manufactured by Higgins throughout the Shreveport area.
In the fall of 1960, Bizet visited the plaintiff’s president, David Moore, in order to induce him to purchase and use a new type of wood flooring designated as “Higgins Stretchedwood Tiles”. Moore agreed to purchase a quantity thereof, and received from Bizet the assurance that the sale would carry with it an unconditional guarantee that Higgins would “make the flooring good” if the tile did not perform as expected. Simultaneously, Moore also ordered the mastic or adhesive to anchor the tile to the concrete slabs of the houses.
The record further reveals thereafter, that Bizet personally installed several floors for instructional purposes, and from time to time supervised other installations.- However, most of the work was performed by A. E. Dean, an independent contractor, who was instructed therein by Bizet. Dean testified without contradiction that all installations by him or his employees were performed in strict conformity with Bizet’s instructions, together with the written instructions furnished by Higgins.
After a short period of time had elapsed, the flooring began to come loose, causing innumerable complaints to emanate from the purchasers of plaintiff’s houses. It is of importance to note that all of the floors became disengaged from the slabs, both those installed by Dean and those by Bizet himself. As the complaints arose, repairs or adjustments were, very significantly, made by Higgins through Bizet. Eventually, however, the condition of the floors became so bad that an extensive program of replacement had to be undertaken. Plaintiff then informed the homeowners that they could exercise an option of obtaining *141 spot repairs from Higgins or the installation of an entire new floor. This replacement program was undertaken with the complete approval of Bizet.
In view of the fact that a great number of floors needed repair or replacement, plaintiff sought to protect itself from financial loss by securing from Bizet, as the representative of Higgins, a letter[1] confirming the oral guarantee made by Bizet at the time of the original sale and binding Higgins to replace any unsatisfactory flooring. This letter was supplemented by another letter[2] written by Bizet fixing the amount to be reimbursed to the plaintiff at 41$ per square foot for replacement of the defective flooring. Bizet very honestly testified that both letters were written by him on behalf of Higgins and that he had personally arranged for this price from local flooring contractors. A copy of Bizet’s first letter was received by E. P. Crozat, a vice-president of Higgins, approximately one month after it was written.
Plaintiff then paid the flooring contractors hired by Bizet to perform the replacement services, and thereafter billed Higgins. Higgins refused to pay these amounts, informing plaintiff that the bill should have been sent to General Flooring, in whom title to the tile was vested and who was in fact the true vendor thereof. This was the first notice to the plaintiff that any other company was involved in the transaction. When Higgins persisted in its refusal to pay for the installation of the new floors, plaintiff instituted this suit.
Higgins’ significant contentions and the principal issues posed for our consideration are (1) that it was not the vendor of the tiles and thus should not be held liable for their replacement, (2) that even if it is in fact the true vendor, the action of Bizet in agreeing to replace the defective tiles was outside the course and scope of his employment and hence not binding on it.
In support of its first contention, Higgins introduced into the record evidence to show that it manufactured the tile in question under a contract which existed between itself and General Flooring Co., Inc.; that it performed the manufacturing process on material owned by General Flooring under its patent and quality standards; and that the raw material and the finished tile was at all times owned by General Flooring and not by Higgins. In effect, Higgins argues that it was merely the selling agent for General Flooring, a corporation which counsel admits is now in receivership in the Civil District Court for the Parish of Orleans.
On the other hand, the record reveals that General Flooring, Inc., possessed no sepa *142 rate identity from Higgins except for the fact that it was incorporated under Louisiana law. It had no separate 'offices from Higgins Industries, Inc., and all of its officers, with the exception of its directorate, were also officers of Higgins.
The jurisprudence of this state is well settled to the effect that a captive corporation cannot he used as a screen or shield behind which one may hide his true interest in a transaction. The foregoing rule is briefly set forth in 18 C.J.S. Corporations § 6, p. 376 and reads as follows:[3]
' “It is clear that a corporation is in fact a collection of individuals, and that the idea of the corporation as a legal entity .or person apart from its members is a mere fiction of the law introduced for convenience in conducting the business in this privileged way. It is now well settled, as a general doctrine, that, when this fiction is urged to an intent not within its reason and purpose, it should be disregarded and the corporation considered as an aggregation of persons, both in equity and at law.”
Defendant contends that Bizet’s actions in guaranteeing, on behalf of Higgins, to assume the cost of replacing the tile were outside the scope of his authority, since Bizet, as sales representative, had never been instructed to so act by his principal. However, even if this were true, the record reveals that Bizet was acting within the scope of his apparent authority. In the relatively recent case of Molero v. The California Co.,[4] the rationale of apparent authority was succinctly stated and reads as follows:
“It is the well established jurisprudence of this state that the measure of an agent’s authority is the apparent authority with which his principal has invested or clothed him and not the secret and private instructions or limitations to which the principal and agent have agreed. However binding such secret, undisclosed instructions or limitations may be as between principal and agent they are ineffective against third persons who deal with the agent, in good faith sans knowledge thereof. LSA-C.C. Article 3000; Busby v.. Walker, La.App., 84 So.2d 304; Interstate Electric Company v. Frank-Adam Electric Co., 173 La. 103, 136 So. 283.”
Bizet was the sole representative of the-defendant Higgins in the Shreveport area,, handling sales, making demonstrations, effecting adjustments for dissatisfied customers, and in general handling all matters, pertaining to Higgins’ interest, since Higgins was domiciled in New Orleans.
When the defects began to appear in the-installed floors, it was Bizet who made the-adjustments with the customers, and not. Higgins or General Flooring. Moreover,, almost a year elapsed after these adjustments were made, and the general replacement program had long begun, when the-letters of guarantee were written by him as: agent for Higgins. Therefore, we are convinced that by permitting Bizet to effect the-adjustments and in general to handle the entire matter of the replacement of the defective flooring without any intervention by the home office, which to reiterate was located in New Orleans, the defendant Higgins clothed Bizet with the indicia of authority to act in all matters respecting the-defective flooring. Thus, it is clear that plaintiff was entitled to assume, in view of prior events, that Bizet possessed the authority to make the guarantees which defendant now seeks to repudiate.
Moreover, assuming arguendo, a view most favorable to the defendant herein, that Bizet did not possess such authority,, the fact that one of the defendant’s vice- *143 presidents received the copy of the letter which reiterated the guarantee and took no steps to repudiate Bizet’s action, clearly consitituted a ratification thereof which hound Higgins as fully as if Bizet had possessed such authority ab initio.[5]
Therefore, we are of the opinion that Higgins was in fact vendor of the material in question, and that it is bound by the agreement signed by Bizet as its agent to indemnify the plaintiff for the defective wood-block flooring at the rate of 41$ per square foot. Accordingly, the decision of the lower court is hereby affirmed at the defendant’s cost.
Affirmed.

. “Shreveport, Louisiana
.November 27, 1961 “David Moore Development Co.
6140 Union Avenue Shreveport, Louisiana “Dear Mr. Moore:
“In regard to your guarantee on Stretch-edwood Tile, we of Higgins Industries, Inc. will replace the jobs you have applied with the emulsion type mastic which are loose. This is a working agreement with the home owner and the installation persons. We accept responsibility on material defects when applied as per our instruction and direction.
“Sincerely,
/%/ Joe Bizet
Joe E. Bizet, Representative Higgins Industries, Inc.
“cc: E. P. Crozat.”

. “December 12, 1961
“David Moore Development 6140 Union Avenue Shreveport, Louisiana “Dear Mr. Moore:
“General Flooring will make good your .expense of 41¡2 per sq. ft. for the Slretch-edwood Tile to be replaced on faulty jobs and the expense of removing same. Hig-gens (sic) Industries will then bill you for Grade A-9 x 9 x %" blocks to replace same at 34(2 per sq. ft. less carload freight allowance. Ooldtite mastic to be billed at 90(2 per gallon F.O.B. New Orleans.
“Sincerely yours,
/s/ Joe Bizet Joe Bizet, Representative Higgins Industries P. O. Box 8034 Shreveport, Louisiana”

. See also Brown v. Benton Creosoting Co., 1 La.App., 147 So.2d 89.

. La.App., 145 So.2d 602.

. Gallioto v. Trapani, 238 La. 625,116 So.2<] 273.