Statement of the Case.
MONROE, C. J.
This is a petitory action for the recovery of a tract of swamp land, indicated by the shaded area on the subjoined sketch and described as situated in the parish of Iberville and consisting of fractional section 96, T. 10 S., R. 13 E., and so much of section 1, T. 11 S., R. 13 E., as will make up 300 acres between parallel lines. The original defendant, James A. Ware, having died, his widow and son (the latter béing his sole heir) were put in possession of his estate and made defendants in his stead, and they having conveyed the land to the Belle Grove Planting & Manufacturing Company (organized by them), that corporation was also made defendant.
The land in question was included among several tracts of “vacant land,” which, with a certain sugar plantation, now known as “the New Hope Plantation,” belonged to Trasemond Landry, and at some time prior to January, 1868, had been mortgaged by him to secure a subscription of over $100,000 to the capital stock of the Citizens’ Bank, which mortgage was, in turn, pledged to secure the payment of certain bonds issued by the authority of the state of Louisiana, and the whole of which property was adjudicated to the bank in a proceeding in foreclosure on the date above mentioned, without, however, affecting the status of the stock mortgage which, by virtue of special legislation, was to remain intact until the payment of the bonds. As plaintiff and defendants alike trace title to the adjudication so made, it is unnecessary to go into further details concerning it for the purposes of this case.
On March 6, 1868, the bank sold the property subject to the stock mortgage to J. B. Wilkinson for $52,000, of which he paid $3,000 in cash, and for the balance gave notes secured by special mortgage (taking rank next after the stock mortgage); on January 27, 1869, Wilkinson sold an undivided half interest in the property to Allen Thomas, who assumed, to the extent of one-half, his vendor’s obligations to the bank ;• on March 2, 1870, Wilkinson and Thomas executed an instrument under private signature, or are said to have done so by virtue of which the defendants herein set up title to the particular land in dispute; on January 24, 1872, Wilkinson sold to Euclid Borland, Jr., an undivided half interest in the entire property, as acquired by him from the bank, and Borland assumed, to that extent, his obligations to the bank; on February 8, 1873, Borland sold the interest so acquired by him to his co-owner, Thomas, who, in turn, assumed those obligations; and on September 6, 1877, Thomas, by notarial act, reassumed the stock mortgage, acknowledged himself indebted to the bank in the sum of $59,036.88, and gave notes therefor, payable on March 1, 1878, secured by special *1029 mortgage, which notes not having been paid at maturity, the bank, on January 31, 1881, caused executory process to issue from the district court for the parish of Ascension by virtue whereof the sheriff of that párish, after advertisement therein, on March 2, 1SS1, adjudicated the entire property to the bank for an amount falling short by over $100,000 of the mortgage held by it.
On May 5th following the bank filed an application for a monition in the district court for the parish of Ascension, and obtained a judgment thereon; but James A. Ware and others thereafter filed oppositions, alleging, inter alia, that the judgment had been rendered in chambers and out of term time, and was therefore void and of no effect, and Ware further alleged that he had acquired title to the land here in dispute through mesne conveyances from Wilkinson and Thomas by virtue of the instrument heretofore mentioned; that the bank liad acquired no title thereto for the reasons that it was situated in Iberville parish, and was not contiguous to that which had been seized in the parish of Ascension; that the mortgage under which the seizure purported to have been made had not then been recorded in Iberville; that the sale was not advertised in that parish; and that the sheriff of the parish of Ascension was without authority to make it. After hearing, the oppositions were dismissed and the title set up by the bank was confirmed; but an appeal was allowed to this court, by which the judgment was reversed and the case remanded in the following terms, to wit:
“It is conceded that, although the mortgaged property is described and represented in the mortgage as being situated in the parish of Ascension, a portion of it is really in the parish of Iberville, and therefore proper publication was necessary to be made in both of those parishes to authorize the sale. Proper legal evidence was not introduced showing such publication in Iberville. The judgment in chambers is null and of no effect. In re Gay, 20 La. Ann. 176; Moore v. Knapp, 7 La. Ann. 22. * * * The opponents, to our minds, have such an interest as gave them a cause of action which is set forth in their oppositions, which were, to our minds, improperly dismissed. * * * Spencer v. Goodman & Bradfield, 33 La. Ann. 906. In this- proceeding we are not called upon to pass upon the validity of the mortgage and other claims of the bank, but only to decide as to the regularity of the proceedings and the correctness of the judgment on the evidence in the record.
“It is therefore ordered * * * that the judgment ® * * be annulled, •* * * without prejudice to the right of the Citizens’ Bank to proceed according to law, and, with the introduction of proper and legal evidence, to prosecute their suit for monition, this case is remanded to the district court for the parish of Ascension, to be proceeded with according to law, appellees to pay the costs,” .etc. Citizens’ Bank v. Allen Thomas, No. 8456 of the docket of this court (partially reported in 34 La. Ann. 1254).
The opinion of this court was handed down on April 10,1S82, and no further steps appear to have been taken in the monition proceedings since that time.
In the meanwhile (i. e., while the matter was pending on appeal in this court) the bank, with the consent of the holders of the bonds which the stock mortgage was intended to secure, had sold the plantation and vacant lands, including the land in dispute, free of incumbrance, for $30,000 in cash, to Oliver Beirne, by whom it was devised to his grandchildren, members of the Miles family, who conveyed it to “the Miles Planting & Manufacturing Company, Limited,” by which it was conveyed to “the Miles Planting & Manufacturing Company,” the plaintiff now before ■the court.
The instruments of conveyance upon which defendants rely, as, in part, showing their, title, read as follows:
“Parish of Iberville, State of Louisiana, March 2, 1870. We, the undersigned, do agree to convey to Henry Ware, his heirs or assigns, such title as we have acquired, or may acquire, from the Citizens’ Bank to fraction No. 96 and an additional amount or number of acres of the north end of section 1 as will make 300 acres of land, including section 98, commencing at the northeast corner of fraction 96 on the back line of Andrews tract, and running south with the east boundary of fraction 98 and section 1 a sufficient distance to include the number of *1031 acres specified; thence west to the west houndary of said section 1, so as to include the 300 acres between parallel lines, including the land most contiguous to the Andrews tract. The consideration for which said land is sold is $1,500, the receipt of which is hereby acknowledged; said titles to he made as soon as the land is surveyed, or by the 1st day of June next. [Signed] Allen Thomas. J. B, Wilkinson.”
Indorsed:
“Obligation of J. B. Wilkinson and A. Thomas.”
Beneath, the names so written appears the following:
“I have this day transferred to James A. Ware and John M. Ware all the right, title or interest I have in the within obligation. February 21, 1S79. [Signed] Henry Ware.
“Recorded in B. N. of Conveyance No. 31, p. 798 et seep, parish of Ascension, Feb. 15, 1880.
“[Signed] W. W. Buford, Recorder. •
“A true record. February 28, 1880.
“[Signed] Henry Desobry, Dy. Recorder.
“State of Louisiana, Parish of Iberville.
“I hereby certify that the above and foregoing is a true and correct copy of the record on file in my office in Con Book No. 14, Entry 253, and I further certify that the original act is not on record in my office.
“Witness my hand and seal the 28th day of Dec., A. D. 1906.
“[Signed] T. E. W. Grace,
“Dy. Clerk and Recorder.”
It is shown that John M. Ware sold his “undivided half interest of all right, title, interest, and claim” in and to the land in dispute to James A. Ware, who sold 45 acres thereof to Mrs. Jas. S. Tuttle, “with only such warranty and guarantees as he acquired from his vendors, and no more, and without agreeing to return the purchase price,” and that,, after his death, his widow, and heir, in 1910, conveyed the remaining part of the tract in question with other property to the defendant corporation created by them, for a price payable in shares of its capital stock.
It is also shown that Henry Ware, before and after the execution of the instrument by Wilkinson and Thomas, was in the habit of taking timber from the adjacent swamp for plantation purposes, and that the same habit prevailed among the other planters, some eight or ten in number, whose plantations extended to the swamp from different directions, and that, so far as the Wares were concerned, that habit was continued until, say, 1912, when it was stopped by an order of court, issued at the instance of the plaintiff; it being quite likely that the planters thus referred to had rights of ownership which, in most instances, entitled them to take the timber, and quite as likely that, in other instances, the lines which bounded their swamp land holdings, or supposed holdings, were not defined, and that the overstepping of them was common and understood.
There is some vague testimony concerning the clearing and cultivation of a few acres of the disputed tract, in addition to that sold to Mrs. Tuttle, but, upon the whole, we are of opinion that the defendant’s acts of possession which are entitled to consideration were confined to the cutting of the timber. The property was assessed to the Wares for a number of years, but they failed to produce any tax receipts; and it, or part of it, was also assessed to plaintiff and payment of the taxes by plaintiff was proved.
Opinion.
[1, 2] Defendants assert that the instrument alleged to have been executed by Wilkinson and Thomas on March 2. 1870, under which they claim title, was recorded in the parish of Iberville on February 28, 1880, and there is evidence tending to support that assertion. It is not asserted that any of the muniments of 'title relied on by plaintiff were ever recorded in that parish, except the mortgage under which the bank foreclosed, which was not so recorded until April 11, 1881, some time after the adjudication of the property.
Defendants deny that the bank acquired

*1033

any title by tbe adjudication in question, and allege that tbe subsequent sale to Beirne was made with full knowledge of the fact that thpir authors had been in open, peaceful, and uninterrupted 'possession of the property, under a title translative of property, for more than 30 years, and they plead that prescription, and also an estoppel, based on the failure of the bank to prosecute the monition proceeding.
Plaintiff’s counsel argue in their brief that as the muniments of title relied on by them, dating back to 1S39, describe the land in question as situated in the parish of Ascension, and as defendants have failed to prove that it was not so situated at the date of the adjudication in 1881, it should be held to have been within that parish at that time, though, without explaining how it became transferred from the one parish to the other, they admit that it is now in the parish of Iberville. But this court found in 1882, in *1035 reversing tire judgment in tire monition suit, that it had been there conceded that the land was in Iberville parish, and that proceeding was instituted in June, 18S1, within a month or two after the adjudication. The petition in this suit filed in December, 1906, alleges that it is in that parish, contains no intimation that it was ever, at any time, in any other parish, and plaintiff introduced in evidence a sketch, a portion of which is certified by the author, called by plaintiff as a witness to be “a true, faithful and complete copy of a portion of the large, printed map, entitled ‘Map of the Parishes of Pointe Coupée, West Baton Rouge, and Iberville, Including Parts of the Parishes of St. Martin and Ascension, Louisiana,’ issued in 1859 by A. J. Powell,” as also a blueprint and lithographed copy, bearing the legend “Plat of Survey of the Hope Swamp. Belonging to the Miles Timber Co.,” made by the witness mentioned in 1910; from all of which allegations and documents it appears that plaintiff’s muniments of title notwithstanding to the contrary the land in dispute has been in the parish of Iberville at least since 1859. But whether it has or not has never been an issue in this case, since plaintiff sued for'its recovery, alleging it to be so situated, and defendants were entirely justified in the absence of any further allegation on the subject, in accepting that “allegation as establishing, with their acquiescence, the location of the land for all the purposes of the case, and were not called on to prove a fact which plaintiff alleged and they were willing to admit. The counsel also in a reply brief which has been filed by them argue that the instrument said to have been executed by Wilkinson and Thomas should not be considered by the court for the reason that it was admitted in evidence over their objections, and shows—
“that it was neither acknowledged by .the parties nor attested by one or more subscribing- witnesses, either before or after registry; nor is there any proof in the record that the document was actually signed by the persons whose names appear on it; nor does any one testify that he knows as a fact that the parties actually signed it, and that it is a genuine instrument”.; that “the original instrument was not even produced and offered in evidence, and no proof was offered to show that it had been lost, mislaid, or destroyed. The document which was offered was merely a typewritten copy, prepared from the conveyance records and certified by the clerk, who stated that the original is not in his possession.”
The same comment applies to the assignment at the foot of the document by Henry Ware in favor of his two sons, wherein he assigns all of his right, title, and interest in the aforesaid obligation.
The proper time and place to have made those 'objections was when the documents to which they refer were offered in evidence on the trial in the district court, but the only objection then and there made appears in the transcript as follows:
“By Mr. Lemann (Counsel for Defendants): I offer in evidence certified copy of act of transfer from Allen Thomas and J. B. Wilkinson to Henry Ware, of date March 2, 1870, together with certificate of registry of the recorder of the parish of Iberville as well as the transfer from Henry Ware to James A. Ware and John M. Ware, under date February 21, 1879, to-. gether with certificates of the recorder of parish of Ascension, being documents marked ‘D. 5’ and ‘D. 6.’
“By Mr. Wilbert (Plaintiff’s Counsel): I object to these offers -on the ground that the purported sale is nothing more than an agreement to sell, as set forth in the document, and title to be made as soon as the land is surveyed; and I also object to the offer of sale of Henry Ware to James A. and John M. Ware, as said document is not an act of sale, but transfers all of the right,’ title, and interest of vendor to the within obligation.
“Agreement of counsel: All objections here made are to be passed on by the court when the case is submitted to him.”
[5] In the opinion of the trial judge, which concludes with a decree rejecting plaintiff’s demands, the objections as thus stated are ignored, and, as we take it, impliedly overruled; and, quoad those objections, and in the absence of any other, we are of opinion that the instruments in question are prop *1037 erly in evidence, and that they with the other evidence that has been adduced and the allegations of the petition, are sufficient to show that plaintiff found defendants in possession, under a claim of title, and not as trespassers, from which it follows that plaintiff must recover, if at all, upon the strength of its own title and not upon the weakness of that set up by defendants.
Turning then to the question whether plaintiff has established the title set up by it, and it being settled that, for all the purposes of the case, the land in dispute lies in the parish of Iberville, we are further of opinion that its sale by the sheriff of the parish of Ascension, in that parish, and without advertisement in the parish of Iberville, under executory process issued from the district court for the parish of Ascension, was unauthorized by law and void, and hence that the adjudication conveyed no title to the bank and the bank conveyed none to Oliver Bierne, under whom plaintiff more immediately asserts the title sued on.
It is true that, among the exceptions to the general rule that one must be sued at the place of his domicile, the Code of Practice declares, in article 163 (as amended and reenacted by act 61 of 1S76), that:
“ * * * When proceedings are instituted in order to obtain the seizure and sale of real property. in virtue of an act of hypothecation importing confession of judgment, * * * the defendant may be cited, whether in the first instance or in appeal, either in the jurisdiction where the property * * * hypothecated * * * is situated, * * * though he has his domicile or residence out of that jurisdiction, or in that where the defendant has his domicile, as the plaintiff chooses: Provided, that all judgments rendered in such cases shall only be operative up to the value of the property proceeded against, and not binding for any excess over the value of the property, in personam, against the defendant.”
[3,4] By other provisions of that Code, however, sheriffs are restricted in the exercise of their functions in civil cases, to their respective parishes. O. P. arts. 642, 643, 646. And they can neither seize property in other parishes nor deliver it if sold by them. Dinkgrave v. Sloan, 13 La. Ann. 393; Levy, Loeb, Scheuer & Co. v. Acklen, 37 La. Ann. 545. By reason whereof the proper course to pursue, where, in the matter of the enforcement of a claim secured by a mortgage, importing confession of judgment, tbe bolder elects to proceed at the domicile of the debtor, rather than in the jurisdiction where the mortgaged property is situated, would seem to be to proceed via ordinaria, and, after obtaining judgment in the court of the domicile, send it for execution to the court having jurisdiction of the property, as provided by C. P. 732. Gravier et al. v. Baron et al., 4 La. 239; Generes v. Simon, 21 La. Ann. 653. Beyond that tbe law contemplates that property which is to be sold under judicial process shall be advertised in the jurisdiction where situated, and where the sale is to be made, since, in most cases, it would be a vain thing to advertise property in one part of tbe state in order to sell it in another.
It is therefore ordered that the judgment appealed from be affirmed at the cost of the appellant.