McBRIDE, Judge.
This suit was brought by the S. H. Han-ville Lumber and Export Company, Inc., against the defendants, seeking to recover the sum of $1845.76, based on an account beginning November 11, 1948, and continuing through March 30, 1949. All of the transactions mentioned in the petition were between plaintiff and Cahall-Blaize Lumber Company, a commercial copartnership composed of A. N. Cahall and Bernard A. Blaize, the property and rights of which copartnership were subsequently ac *63 quired by the corporation known as C-B Lumber Company, Inc. Named as defendants are the corporation, the copartnership, and its component partners, and judgment is sought by plaintiff against them solidarity-
The suit is based on an account showing several transactions. The defendants, in their answer, allege that the entire amount of plaintiff’s claim arises out of a transaction involving the shipment of a carload of lumber to Athens Flooring Company, of Athens, Ohio. At the inception of the trial, it was stipulated by counsel that the only dispute between the parties concerned the above mentioned shipment of lumber, and also an item claimed by the plaintiff in the sum of $169.44, which represents freight, dressing charges, and transit penalties in connection with a shipment of lumber to the Wood Lumber Company, Birmingham, Alabama. Counsel, both in brief and in their arguments before us, treated the case as though only the above two transactions were involved, and no mention is made of any of the other transactions reflected by the statement annexed to the petition.
From a judgment rendered in favor of plaintiff for $1825.76, defendants have perfected and prosecute this appeal.
The evidence shows that the plaintiff is a wholesale “lumber broker,” and Cahall-Blaize Lumber Company was engaged in the business of manufacturing lumber. The modus operandi employed in dealings between plaintiff and the said partnership was as follows: plaintiff would make advances of money to Cahall-Blaize Lumber Company, which would in turn set aside and store for plaintiff such lumber as plaintiff designated, and the Cahall-Blaize Lumber Company would ship out this lumber on plaintiff’s instructions. Plaintiff, on November 11, 1948, made an advance of $2000.00 to Cahall-Blaize Lumber Company, and on that date, upon the order of plaintiff through its employee, Campbell, Cahall-Blaize Lumber Company piled down and tagged for plaintiff certain S4S kiln dried yellow pine lumber, supposedly of C or better grade. This lumber was to remain in the yard of Cahall-Blaize Lumber Company for the account of plaintiff until such time as plaintiff ordered it shipped out.
On November 17, 1948, plaintiff made another $2000.00 advance to Cahall-Blaize Lumber Company, and directed the lumber company to ship 25,000 feet of C and better finish S4S kiln dried yellow pine lumber to Athens Flooring Company of Athens, Ohio, the shipment to be made in one car in two sections of 12,500' feet each. The bill of lading evidencing the shipment was to designate plaintiff as the consignor of the shipment.
On November 27, 1948, Cahall-Blaize Lumber Company rendered its invoice to plaintiff covering the shipment, for $3581.-33, the bill showing that 24,336 board feet of C and better finish S4S kiln dried yellow pine had been shipped to Athens Flooring Company in one car, in two sections, 11,824 feet being contained in section A, and 12,512 feet in section B.
The dispute between the parties concerns the quality or grade of the lumber contained in section B of the car, comprising 12,512 feet. The lumber in section A is not at all involved in this case.
S. H. Hanville testified that he received the complaint about the shipment through his commission man, a Mr. Tombaugh, who was located in Athens, Ohio, and who made the sale of the lumber, and that the complaint was received shortly after the car arrived at Athens. Hanville claims that upon receiving the complaint he communicated with Bernard A. Blaize by telephone. He followed this up on January 28, 1949, with a letter to Cahall-Blaize Lumber Company, in which he called attention to the fact that a complaint had been made by the consignee of the lumber in Athens regarding the widths of the lumber. The letter further stated that Athens Flooring Company had refused to pay the invoice on the ground that the material in the car was not up to grade.
Hanville testified that Blaize was not enthusiastic about calling at plaintiff’s office, and disregarded several appointments he ■ had made. Hanville stated,- however, that after writing the letter of January 28, *64 1949, he was finally able to get Blaize into plaintiff’s office and the matter was discussed. On February 7, 1949, Hanville addressed a letter to Blaize in which he advised the latter that whereas no settlement of the matter had been made, it seemed as though a Southern Pine Inspection Bureau inspection of the lumber would be necessary at Athens. Again, on February 28, 1949, Hanville advised Cahall--Blaize Lumber Company that the lumber was not up to grade, and that Athens Flooring Company would be willing to have an S.P.I.B. inspection of the car. To this letter Cahall-Blaize Lumber Company replied, stating that whereas more than ninety days had elapsed since the1 lumber had been delivered to the consignee, it declined to consent to an official inspection. Cahall-Blaize Lumber Company offered to compromise the matter, and the offer of compromise was in turn submitted by Hanville to Athens Flooring Company.
The matter remained deadlocked, and on March 31, 1949, Hanville requested the S.P.I.B. to make an official inspection of the lumber in the plant of Athens Flooring Company at Athens, Ohio.
George Killam, the inspector in the employ of Southern Pine Inspection Bureau, testified as a plaintiff witness. He made an inspection of the lumber in accordance with the rules of the Southern Pine Association in -the yard of Athens Flooring Company, Athens, Ohio, and of the total amount graded, only 3527 feet out of section B met with the standard of C grade and better. According to his testimony, and as reflected by his inspection report, Killam placed the degraded lumber in classes D, and 1, 2, 3, and 4, all below the standard of grade C.
On May '2, 1949, by letter, plaintiff notified Cahall-Blaize Lumber Company of the results of the inspection, and advised that the degraded lumber would be disposed of for the best price obtainable. The lumber was subsequently sold to a company at Youngstown, Ohio, for $657.83. .
Alleging that it suffered damage because of the fact that the lumber was below grade, plaintiff claims of defendants the sum of $1656.32. From the statement annexed to the petition, we are at a loss to understand how plaintiff fixed its damages at said sum.
Although several exceptions were interposed to the suit by defendants and overruled by the trial judge, only one of them, to-Wit, that of prescription of one year, is reurged before us. The suit herein was filed on December 19, 1949. The defendants take'the position that this is an action quanti minoris or quasi ex delicto, and that plaintiff’s claim arising from the shipment to Athens Flooring Company is barred by the prescription of one year. We perceive no merit whatever in the exception, and it must be rejected. The claim is purely and simply one for damages ex contractu, and the prescription of one year is not applicable.
It is conceded by the parties that Southern Pine Association weights, grading rules, and ethics govern the contract. The manual of the S.P.I.B. was introduced into evidence. It is therein provided that when a complaint relates to grade, the buyer is required to accept that portion of the lumber which is not in dispute, holding intact for official inspection the portion thereof the grade of which is in dispute. It is provided that acceptance and use by the buyer of a portion of the shipment shall not be construed as an acceptance of the entire shipment. The buyer is required to pay in accordance with the terms of the sale for the portion of the lumber which is accepted. The. duty is placed upon the claimant buyer to hold the disputed lumber intact, properly protected, for not exceeding thirty days after the date of the request for inspection, and to file complaint with the seller within ten days from the receipt of the shipment.
Defendants contend that Cahall-Blaize Lumber Company never at any time authorized an S.P.I.B. inspection. If the letter of March 2, 1949, addressed by Cahall-Blaize Lumber Company to plaintiff, wherein an inspection was- declined, is taken alone, the contention of defendants would seem to be borne out. But, there is in the record the unequivocal testimony of Hanville and two of plaintiff’s employees, 'Campbell and Moon, to the effect that Blaize verbally *65 agreed to a bureau inspectipn of the shipment. Defendants suggest that the testimony is suspicious, because if permission for an inspection had been given, the plaintiff would certainly have required a confirmation of it in writing. Hanville advanced a plausible explanation. He stated that although Blaize had verbally consented to a bureau inspection, he preferred written consent.
 It is also argued on behalf of defendants that there is no evidence demonstrating that the lumber inspected at Athens, Ohio, was part of the same lumber shipped by Cahall-Blaize Lumber Company. Counsel attempt to impugn the efficacy of the lumber identification form which was signed by an employee of the Athens Flooring Company and given to Killam, the inspector, contending that the identification form amounts to nothing more than hearsay evidence, inasmuch as the party who signed it was not produced as a witness. It is too late for defendants to make such co-mplaint. The transcript reveals that when plaintiff’s counsel attempted to introduce the document in evidence, defendants objected thereto on the ground that it was not executed by Killam, who was then testifying, but by some other person who was not present in court. However, defendants’ counsel withdrew the objection, and the court admitted the identification form in evidence, and properly so. We are bound to consider the document as competent evidence, for it is well settled that where a document was offered and admitted in evidence without objection, its consideration by the appellate court cannot be objected to. Kohlman v. Witherell & Dobbins Co., 155 La. 57, 98 So. 756; Iberville Wholesale Grocery Co. v. People’s Bank, 143 La. 278, 78 So. 558; Miles Planting & Mfg. Co. v. Ware, 142 La. 1026, 78 So. 104.
Defendants finally contend that plaintiff' is barred from complaining that the lumber was below grade, for the reason that a representative of plaintiff was present in the yard of Cahall-Blaize Company on November 11, 1948, and inspected the lumber while it was being tallied and piled down, and that this employee accepted the lumber oh behalf of plaintiff without objection as to grade. Campbell was the employee in question. It is not disputed that he was present in the yard when the lumber was tallied and piled down on November 11, 1948. Campbell, who occupied the position of salesman, bookkeeper, and buyer for plaintiff, explained that as a buyer he would merely place purchase orders with the various lumber manufacturers for plain-' tiff’s account. Campbell, who incidentally is Hanville’s brother-in-law, had no experience whatever as a lumber grader, but on some occasions upon placing orders for lumber, he would go to the yard of the lumber manufacturer “to see that- everything went off right.” He witnessed the lumber in this case being “piled down and tagged,” and advanced money to Cahall-Blaize Lumber Company thereon. He insisted that he merely tallied the lumber without grading it, as he has had no experience as a grader, of lumher.
Hanville admitted that the lumber actually belonged to plaintiff after the $2000.00 was advanced' to Cahall-Blaize Lumber Company on Novfeniber 11, 1948, and that the lumber was piled down, but not inspected, and tagged for the account of plaintiff in the yard of the lumber company. Hanville stated that no one representing plaintiff inspected the lumber, “because the mill stands behind the grade,” and “the grade would be determined at the time of shipping.” ' The ■ testimony of Hanville and Campbell convinces us that when plaintiff made the advances to Cahall-Blaize' Lumber Company the lumber was set aside in the latter’s yard for plaintiff’s account, without having been inspected as to grade by any representative of plaintiff. We are-convinced that Campbell, as he testified, was interested only in tallying the lumber which was set aside for plaintiff. There is absolutely no contradiction of his testimony as to that feature of the case.
We entertain not the slightest doubt that there was an undergrade in' certain of the lumber, as testified ‘to by Killam. The only witness appearing for defendants was Bernard A. Blaize, who, al- ' though not himself an expert, attempted to assail the testimony of the inspector, Kil- *66 lam. Cahall-Blaize Lumber Company itself had a lumber grader, whose name was Hanberry and who seems to have inspected the lumber when it was loaded for shipment to Ohio, but Hanberry was not produced as a witness, and no attempt was made by defendants to explain his absence. Under a familiar principle of law, we can only draw an unfavorable inference against the defendants for their failure to produce Hanberry. A litigant’s failure to produce a witness, without accounting for his absence, raises a presumption that had the witness testified his evidence would have been unfavorable to the litigant.
The trial judge awarded plaintiff a judgment for $1825.76, but we cannot comprehend how such amount was calculated. The judgment is clearly excessive and must be reduced. The proper measure of plaintiff’s damages is the difference between the amount which it should have received for the lumber from Athens Flooring Company, and the amount actually received, plus expenses incurred. See Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 360, 53 So. 646 (on rehearing). The contract price of the lumber which was to have been paid by Athens Flooring Company amounted to $4258.80, and plaintiff received therefor, including the $657.83 derived from the sale of the degraded lumber, a total of $3344.26, or a difference of $914.54. The expenses in connection with the shipment, incurred by plaintiff, are: S.P.I.B. inspection, $78.55; loading and unloading lumber for inspection, $48.00; freight on degraded lumber, $141.83; total $268.38.
Plaintiff included in the claim certain other items of expenses which clearly cannot be allowed. For instance, claim is made for the fee paid to a collection agent for collecting the amount due by the Athens Flooring Company to plaintiff for the undisputed portion of the lumber. We are not enlightened by counsel as to a legal foundation for the claim. The same can be said for the items, “interest from date shipped until lumber accepted,” and “int. on advance.”
The petition alleges that plaintiff and Cahall-Blaize Lumber Company agreed that the latter would pay plaintiff interest on all advances made, and on all balances due, at the rate of six per cent per annum from the date of such advances, or the due date of the balances, until paid. Defendants, in answer, deny the allegations as to interest for “lack of sufficient information upon which to justify belief therein.” Defendants’ counsel admitted at the beginning of the trial that interest was paid on all advances made by plaintiff, but no mention was made by counsel as to the rate of interest. Campbell, plaintiff’s bookkeeper, testified that interest was charged at the rate of six per cent, to which Blaize had agreed, “on all money that we advanced him from the date we advanced him the money until the lumber was shipped.” Neither the statement of defendants’ counsel nor Campbell’s testimony makes proof of plaintiff’s allegation that interest was to be paid on all advances made and on all balances due plaintiff, at the rate of six per cent per annum from the date of such advances or the due date of such balances, and in the absence of convincing proof, nothing more than legal interest from judicial demand until paid should be allowed in the judgment on the balances claimed as being due by defendants on the two transactions herein involved.
Defendants assert no defense whatever to the claim of $169.44, representing freight, dressing charges, and transit penalties in connection with a shipment of lumber to Wood Lumber Company, Birmingham, Alabama. The claim, which arose out of a shipment of 12,200 board feet of rough lumber which was to have been dressed in transit, was adequately proved. It was the duty of Cahall-Blaize Lumber Company, under its arrangement with plaintiff, to have dressed the lumber, but it later developed that the lumber company did not possess the necessary facilities for doing so, and plaintiff was compelled to have the lumber dressed through another source at a cost of $169.44.
*67 As' has already been stated, the corporation C-B Lumber Company, Inc., was formed to take over the business and assets of the partnership, Cahall-Blaize Lumber Company, the two partners of which acquired all of the stock in the corporation, save one qualifying share which is owned by the wife of Cahall. Under the circumstances, the corporation, as well as the partnership and its component members, is liable for the partnership debts. Keller v. Haas, 202 La. 486, 12 So.2d 238.
Some months after the transcript of appeal was lodged in this court, but before the matter could be reached for trial, one of the defendants-appellants, C-B Lumber Company, Inc., was placed in liquidation by unanimous consent of all of its stockholders, and Roger E. Pelletier and Homer L. Davis were appointed liquidators of the corporation. Upon their own motion, and by order of court, the liquidators were substituted as defendants in the place and stead of the corporation. The liquidators are properly before the court, and the judgment to be herein rendered should go against them in their said capacities. Bradshaw v. Knoll, 132 La. 829, 61 So. 839; Lewis v. Southern Advance Bag & Paper Co., La.App., 147 So. 532; Tanneret v. Merchants Mutual Ins. Co., 32 La.Ann. 663.
It is therefore ordered that the judgment herein be amended so as to read as follows:
It is ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff, S. H. Hanville Lumber and Export Company, Inc., and against the defendants, Roger E. Pelletier and Homer L. Davis, in their capacities of liquidators of the C-B Lumber Company, Inc.; Ca-hall-Blaize Lumber Company; A. N. Ca-hall; and Bernard A. Blaize, in solido, for the full sum of $1352.36, with legal interest thereon from judicial demand until paid, and for all costs of the trial court. Plaintiff is to pay all costs of this appeal.
And as thus amended, the judgment appealed from is affirmed.
Amended and affirmed.