No. 13,854.

## A. KORY & SONS VS. LEOPOLD M. LAYMAN.

### SYLLABUS.

A preponderance of evidence establishing plaintiffs contention that they bought at a stipulated price a mortgage note held by defendant, they are entitled to recover damages for the breach of the contract by defendant, but the legal measure of damage is the difference between the contract price and the value of the note at or about the time it should have been delivered— not the difference between the contract price and the face value of the note, though it appear that at a sheriff's sale, shortly after, of the mortgaged property under foreclosure of a prior mortgage, a sum sufficiently large was realized to satisfy prior encumbrances and meet in full the note in question.

APPEAL from the Civil District Court, Parish of Orleans— *Ellis, J.*

*Farrar, Jonas & Kruttschnitt,* for Plaintiffs, Appellants.

*Solomon Wolff,* for Defendant, Appellee.

The opinion of the Court was delivered by

BLANCHARD, J. Plaintiffs' cause of action is, that in June 1899, they purchased from the defendant a certain promissory note, executed by Thos. D. Kent and secured by mortgage on certain plantation property in the Parish of Lafourche.

That the note was for $7,000 and bore interest at 8 per cent. from date of execution, February 23, 1894, until paid.

That defendant, as the owner and holder of the note, agreed to sell it to them for $1,125.00 cash, on condition that they would give him a written guaranty against liability growing out of their acquisition of the note.

That plaintiffs consented to these terms and offered to pay the price stipulated and to execute the required guaranty, but that defendant refused to deliver the note.

That, subsequently, the property mortgaged to secure the note was sold under executory process which issued on other notes of a ranking

mortgage and realized a sum sufficiently large to pay the first mortgage notes and the note in question herein, and also the other companion notes.

The contention of the plaintiffs is that had the note been delivered to them at the time of their purchase, they would have realized its full face value, with interest from January 1, 1899. It seems there had been payments of interest on the note and extensions had, and in this way interest had been paid up to January 1, 1899, and the note extended to January 1, 1900.

What plaintiffs sue for, therefore, is the difference between what they agreed to pay for the note, $1,125.00, and its face value, $7,000.00, which difference is $5,875.00, with interest on the full $7,000.00 from January 1, 1899.

This is the amount of damage they aver they have suffered by defendant's breach of the contract of sale.

The answer of defendant is a general denial.

There was judgment rejecting plaintiffs' demand and they appeal.

*Ruling*—No serious questions of law are involved. The case turns on an issue of fact, which is to be determined on the weight and preponderance of evidence, for there is much conflict of testimony.

The note in question was one of a series of three notes secured by the same mortgage. Two of them were for $7,000 each, the other for $6,895.14.

They had originally been the property of Jos. Weill & Co., who pledged them for money borrowed. In this way one of the notes passed into the hands of plaintiffs, one into the hands of defendant, and the third into the hands of one Levy.

Representing the second mortgage on the property, the notes were for some time considered doubtful securities. But, later on, it began to be thought they had a greater value than had been supposed.

Realizing this, plaintiffs, quietly holding on to that one of the notes which had passed into their hands, began to bestir themselves to acquire the other two. But other parties were moving on the same line and a demand for the notes began to develop.

Before this demand became active plaintiffs entered into negotiations with defendant to buy the note he held. Defendant was willing to sell and agreed to take $1,125.00, but wanted the written guaranty hereinbefore referred to.

Plaintiffs were willing to pay the price and give the guaranty, and to have an instrument evidencing the latter drawn up, the parties repaired to the chambers of the attorney of the defendant.

He drew up the instrument, but that one of plaintiffs' firm who was attending to the business expressed a wish to consult his own lawyer before signing.

Accordingly, he took the document over to his lawyer, who, it seems, advised him not to sign it. He returned and reported this fact, and the trade was declared off.

Plaintiffs, however, it appears, reconsidered, overnight, the matter, and their version of the story is that the next day, which was June 20th, they informed defendant they had concluded to sign the guaranty, pay the $1,125.00 and take the note; that defendant agreed to this, but said he could not then deliver the note because he had left it in the hands of his lawyer, who had departed the city on the evening of the preceding day, and that as soon as he returned he (defendant) would get the note and the document and bring both to plaintiffs; that on the next day, June 21st, defendant failed to bring the note and paper to be signed, giving as a reason that his lawyer had not yet returned; and that on the 22nd—the attorney having meanwhile returned—plaintiffs sought defendant for the purpose of consummating the deal, when they were informed by him that his attorney had sold the note to another. Plaintiffs protested, tendered the $1,125.00, and demanded the note.

This version is disputed by defendant, though the parties agree, substantially, as to what took place in defendant's attorney's office at the time the document evidencing the guaranty was drawn up, and as to the trade being declared off at that time.

Following that meeting, defendant's version of the story is that Max Kory, one of plaintiffs, called on him the following day; that he was not in his office when the call was made; that, later, the same day, he went to plaintiffs' place of business where there was some desultory discussion of the matter, some request on plaintiffs' part that the proposed guaranty be modified; that he (defendant) replied he had left the note and written instrument of guaranty with his attorney, who was then absent from the city, and he would do nothing until his return; that Max Kory told him he was endeavoring to secure the note of the same series held by Levy; that his purpose was to secure all three of the

notes, as he would then be in a better position to protect his interests; that he (Kory) did not want the note held by him (defendant) until he had secured that of Levy, with whom he was then corresponding— Levy being a resident of St. Louis, and that to this he (defendant) replied with the statement that when Kory secured the Levy note and exhibited it to him he would know he was in earnest about the purchase of the note he (defendant) held.

Was there a contract of sale, a thing proposed, a price agreed upon, consent of parties?

If so, it took place at plaintiffs' place of business on June 20th, following the meeting the day before at defendant's attorney's office.

Defendant had gone to plaintiffs' office, following the visit of Max Kory to his office, on which occasion he was out.

Now, to the proposition that at plaintiffs' office it was agreed, substantially, by and between Max Kory, representing plaintiffs, and defendant, that plaintiffs would sign the guaranty and pay the $1125.00, and that thereupon defendant would deliver to them the note, four witnesses distinctly testify. They are the three Korys—father and two sons—who compose plaintiffs' firm, and their bookkeeper, Louis Gagnet.

As against this is the testimony of the defendant alone. On collateral matters, however, having a bearing on the main issue, defendant finds corrobroation in the testimony of C. P. Shaver.

This witness, as the agent of the holder of the notes representing the first mortgage resting on the property, who was desirous also of getting control of the notes representing the second mortgage, succeeded in purchsing for $1,600.00 that one of the second mortgage notes held by Levy. He then called upon Kory & Sons (plaintiffs herein) with the view of purchasing the note they held.

In the conversation that ensued he says Max Kory told him his firm was endeavoring to buy the Levy note, and had bought the note held by Layman (defendant herein) conditioned upon his being able to buy the Levy note—from which he (Shaver) inferred or understood the Korys did not want the Layman note unless he could get the other one too.

At that time Shaver had the Levy note in his pocket, though he did not apprise them of it. He says he could not get the Korys to make a fair offer for their note, and he thereupon left them and went

to defendant's place of business. Arriving there he told defendant he desired to buy the note he held. To which he replied, in substance, that he was under obligations to the Korys to sell it to them if they could also buy the other outstanding note held by Levy. Shaver answered this by the statement that the Korys could not buy the Levy note, for he had already purchased it and had it then in his pocket. Whereupon defendant replied "That releases me; you go and talk to my attorney about it."

Shaver then went to the attorney's office where defendant himself shortly joined them, and the result of the negotiations between them was that defendant sold the note to Shaver for $1,750.00 and then and there delivered it to him. Nor did he exact from him any guaranty holding him (defendant) harmless against any liability growing out of his (Shaver's) acquisition of the note, as he had insisted on in the negotiations with plaintiffs.

But whatever of corrobration Shaver's statement may be to defendant's denial of plaintiffs' version of the controversy, we cannot give to it the weight of turning the scale in defendant's favor.

There still remains the testimony of the three plaintiffs and of Gagnet (the latter of whom had no interest in the case and no bias other than that springing from the fact that he was the employee of plaintiffs) that it was positively understood and agreed upon between plaintiffs and defendant on June 20th that the latter would sell them the note in consideration of the price named and the signing of the guaranty.

We are impressed with the belief that a bargain was made and was only prevented from consummation by the then absence of defendant's attorney from the city—both the note and the written guaranty being in his possession.

Before the attorney's return *active* demand for the note developed. Other competitors for it appeared. There was a chance for a rise in price. Defendant discovered this and took advantage of it. Whereas plaintiffs were only to give him $1,125.00, Shaver could be and was forced up to $1,750.00, and the note passed to him. This was on the 22nd of June.

The sale and delivery to Shaver was an active violation of the obligation to sell to plaintiffs, and the latter being apprised of it were dispensed with putting defendant regularly in default, though as to that there was, we think, a sufficient putting in default.

Plaintiffs are entitled to recover, but not, we think, the difference between the $1,125.00 they had agreed to pay for the note and its face value, $7,000.00.

It is in evidence that on June 28th, six days after having been informed by defendant he had disposed of his note to Shaver, they (plaintiffs) sold the note for the same amount ($7,000) which they held for $3,000.00.

This sum is rather to be taken as the value of the note defendant held than its face value.

True, *subsequently,* the sale of the mortgaged property by the sheriff developed a price large enough to pay off prior encumbrances and have sufficient to cover in full the notes of the second mortgage. But this could not be foreseen at the time of the negotiations for the note. At that time the value of the note predicated on the approaching sheriff's sale was speculative.

The legal measure of damages in the case, in the absence of fraud alleged or proved, is the difference in the contract price and the value of the thing at or about the time it should have been delivered. Gillet vs. Landis, 7 R. 332.

We cannot agree with the contention of defendant that because plaintiffs predicate their claim on another and larger measure of damages their suit should be dismissed; that they cannot recover on the smaller measure of damages because not specifically set up.

Plaintiffs alleged a state of facts, which, if proven, establish defendant's liability, and then averred that the damages they had suffered and were entitled to recover is the difference between the price they stipulated to pay for the note and its face value. That was merely a conclusion of law.

Because mistaken in this, and because the law provides another measure of damages in such case, it is no ground for dismissing their suit that they did not invoke it.

The greater includes the less. They prayed to be awarded $5,875.00. We find they are entitled to an award of $1,875.00—the difference between the $1,125.00, the contract price of the note, and $3,000.00, which was its value at or about the time the note should have been delivered to them, as shown by the sale which they made, for that price, of the note they held.

For the reasons assigned, it is ordered and decreed that the judgment

appealed from be avoided and reversed, and it is now adjudged that plaintiffs do have and recover of defendant the sum of eighteen hundred and seventy-five dollars, with legal interest from judicial demand, together with costs of suit in both courts.

Rehearing refused.