REID, Judge.
This is a suit for declaratory judgment brought by Floyd W. Womack, Jr., against Manfred Sternberg seeking a determination of the rights and duties of the parties to a contract. Plaintiff alleges that on November 15, 1960 he and Manfred Stern-berg entered into a written agreement for the exchange of their homes, the Womack home being located at 2910 Murphy Drive, Jefferson Place Subdivision, East Baton Rouge Parish, Louisiana, and the Stern-berg home being located at 3087 East Lakeshore Drive, University Gardens Subdivision, East Baton Rouge Parish, Louisiana. Womack agreed to buy the house of Sternberg for $35,000.00 and Sternberg agreed to buy the house of Womack for $75,000.00. The consideration for each was to be paid by the mutual sale of their properties with Sternberg giving certain mortgages on homes for colored worth $50,000.00 in addition to his home on East Lakeshore Drive. The agreement attached to the petition as Exhibit A stated that Sternberg would not have the mortgages at the time of the passing of the sales, that is, November 25, 1960, but would sign a personal note for that amount which he could redeem by February 15, 1961 with $50,000.00 worth of mortgage paper. The figure $50,000.00 is said to represent the difference in the purchase price of $40,000.00 and a 20% discount on the face value of the mortgage paper. The time for passing the acts of sale was extended by mutual consent from November 25, 1960 to November 30, 1960. Plaintiff alleges that on November 29, 1960, he and Mr. Sternberg met at the office of Mr. Alvin B. Rubin, attorney and notary public, for the purpose of passing the formal acts of transfer and signing the agreement setting forth the nature of the considerations and certain other understandings of the parties. Each party signed an act of sale with assumption of mortgage. In addition, Sternberg executed three non-negotiable promissory notes made payable to “Myself” on or before March 15, 1961, totaling the $50,000.00. Womack signed a note for $9,518.52 representing the difference in the amount of the mortgage on his house assumed by Sternberg and the amount of the mortgage on Stern-berg’s house assumed by Womack. Plaintiff alleges that when he reviewed the purchase agreement of November 15, prepared by the notary public upon instructions of the defendant Manfred Sternberg, he immediately discerned that the agreement as written did not contain all the details of the understanding previously reached between them. He further alleges the omissions were penciled in by the notary on a carbon copy of the typewritten agreement and on a separate memorandum. Rather than interline the changes as agreed between the parties, the notary public had the instrument retyped. Mr. Womack later signed the retyped instrument but Mr. Sternberg refused to sign and instructed Mr. Rubin not to proceed. Mr. Womack demanded that Mr. Rubin proceed with his duties. Mr. Rubin refused and agreed to do whatever a Court might require. Mr. Womack then filed this suit praying for a declaratory judgment as to (1) the duties of the notary public, (2) the validity of the agreement between the parties and (3) the rights, statutes and legal relations of the parties thereto. By supplemental petition the plaintiff further prayed for a judgment decreeing the defendant Manfred Sternberg had actively breached the agreement entitling plaintiff to an option of dissolving the agreement and recovering damages occasioned thereby or demanding specific performance and recovering damages occasioned by said breach. In the interim, Mr. Womack recorded the signed *122 instrument of November 15, 1960 and filed a lis pendens relating’ to his own house and to Mr. Sternberg’s house. Mr. Stern-berg then filed suit claiming $127,500.00 for damages as the result of the recordation by Womack of the agreement of November 15, 1960 in the Conveyance Records of East Baton Rouge Parish. Womack filed a reconventional demand asking the Court to find that Sternberg had actively, in bad faith, breached the agreement between the parties and praying for judgment dissolving the agreement and granting plaintiff in reconvention damages in the amount of $197,055.00 as a result of the active breach.
Following trial of the suit for declaratory judgment the Trial Judge found a valid and binding agreement existed between the parties as evidenced by the agreement dated November 29, 1960, plus the alterations made subsequently and ordered the notary public to date and record the sales of property, to date and deliver the notes and, in accordance with the agreement, to make the interlineations on the document, as dictated by the Court into the record. The Court further found the defendant had actively breached the agreement and that plaintiff was entitled to damages and a dissolution of the agreement or specific performance.
Defendant filed an application for rehearing, alleging that plaintiff had other remedies available to him and the declaratory judgment action would work undue hardship and harassment on the defendant and subject him to a multiplicity of suits because he could not tell whether or not the plaintiff would bring an action for specific performance or rescind and obtain damages. On the application for rehearing the Court agreed that the declaratory judgment suit was a harassment on the defendant as well as an improper remedy and under Article 1876 of the LSA-C.C.P. the Court had the authority to refuse to render a declaratory judgment where such a decree would not terminate the controversy giving rise to the proceedings - as in the instant matter. However, the Court concluded defendant’s contentions should have been raised via exceptions of no right and no cause of action. As the evidence in this case had been heard except as to the rights of the plaintiff as a result of the breach the Court held it impractical and inappropriate to dismiss plaintiff’s suit and, therefore, ordered plaintiff to amend his pleadings. The Court then recalled and vacated its original judgment and gave plaintiff 10 days to amend. Plaintiff filed a second supplemental and amended petition in which he chose to' rescind the contract and prayed for damages in the amount of $197,055.00. The actions were then consolidated for the new trial, following which judgment was rendered in favor of Womack for $21,000.00' including $13,500.00 for loss of profit on the sale of Womack’s house and $7,500.00' loss of profit on value of Sternberg’s house. The judgment dismissed Sternberg’s action and reconventional demand. From-these judgments Manfred Sternberg has lodged these consolidated appeals.
Plaintiff Womack answered the appeals and prayed that the judgment in his favor be amended to include $10,000.00 for loss of discount and $10,245.48 for loss of interest, making a total judgment of $41,-245.48.
There are two main problems concerned in these cases. One deals with procedure and the other with whether there was an agreement which was breached by Stern-berg.
The procedural problem is two fold: whether the declaratory judgment procedure is proper in the case and whether the Trial Judge was correct in ordering plaintiff to amend his suit to pray for either specific performance or damages.
There is little doubt that Article 1871 of the LSA-Code of Civil Procedure permits the use of the Declaratory Judg *123 ments Act in such proceedings. Article 1871 reads as follows:
“Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.” (Emphasis supplied.)
The next question deals with whether or not the trial Court was correct in declaring the rights of the parties and in permitting the plaintiff to amend his petition and to choose his remedy rather than force the plaintiff to file a new suit for either damages or specific performance. In commenting upon his reasons for taking such action the Trial Judge said:
“At this late stage in the proceedings, it would seem foolish for the Court to dismiss the plaintiff’s suit since it had heard practically all the evidence; and it will therefore, order the plaintiff to amend his pleadings so as to ask for the relief desired by him. When the amended pleadings are answered the matter can be set for trial and the evidence taken on the suit for a declaratory judgment can be offered. The only additional evidence that would be necessary would be if the plaintiff elected to sue for nullity and damages. This seems more appropriate to the Court, because all counsel well know, the docket of the Nineteenth Judicial District Court ranges from full to overflowing, and it would appear to be advantageous both to the Court and to counsel not to require the plaintiff to file a new suit and possibly go before a judge of another division to litigate the matter, again.”
Counsel for defendant argues that this action of the Trial Court prohibited his client from having his day in Court for it deprived him of the right of litigating the issues of specific performance and damages. Article 1878 of the LSA-C.C.P. was cited by counsel as establishing the method by which relief based on the declaratory judgment should be granted. Article 1878 reads as follows:
“Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is considered sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.”
- It is true that while Article 1878 indicates that the proper method would be by rule to show cause, nevertheless, an examination of the record in this case clearly shows that the defendant was not prejudiced in any manner whatsoever.
At the original trial on the rule for declaratory judgment the defendant had every opportunity to go into the question of whether or not there had been an agreement and whether or not this agreement had been breached. When the plaintiff filed his amended petition the defendant filed exceptions, which were argued, then filed an answer and reconventional demand, and was given every opportunity to place any and all evidence necessary for his case into the record. All of the issues raised by Womack in his suit were raised again by Womack in appellant’s suit. When both cases were consolidated for trial the defendant did not object and, at the close of the trial, counsel for Sternberg was specifically offered all of the pleadings in both suits in the consolidated cases. It is clear, therefore, that the defendant suf *124 fered no injury, nor was he deprived of any rights whatsoever. In fact, by the very consolidation of the cases, all of the issues which were raised by the supplemental and amended petition were before the Court in the second suit and even if the suit for declaratory judgment had been decreed to be improperly tried, the judgment rendered under the second suit would certainly have been the same as itnder the first suit.
The second major question at issue deals with whether there existed a completed binding contract between the parties, and if so, whether or not the contract was breached.
Defendant raises four basic specifications of error in this record, contending the District Court erred (1) in decreeing it was not necessary for the parties to initial the changes, (2) in holding that defendant Sternberg was bound by a contract to which his signature was not affixed, (3) in allowing testimonial proof over objection of counsel of a verbal sale of immovable property, and (4) in holding, in effect, that immovable property can be transferred without a written agreement and without adverse possession.
There is no question the parties entered into a written, signed agreement on November IS, 1960 for the exchange of various properties. The record is also clear that the date for the passage of the acts of sale was extended by the parties by mutual consent.
The record shows that on November 29, 1960 the parties went to the office of Mr. Alvin B. Rubin for the purpose of executing the sales of their respective properties. It was understood that Mr. Rubin was to represent both parties in the sale or exchange. Mr. Rubin had prepared sales with assumptions of mortgages, the sale with assumption by Mr. Womack to Mr. Sternberg reciting a consideration of $75,-000.00 and the sale with assumption of mortgage from Mr. Sternberg to Mr. Wo-mack reciting a consideration of $35,000.00.
It is further shown that each sale recited the consideration to be paid but the recited consideration was not in the form set forth in the agreement of November 15, 1960. The sales were made in that manner in order to remove any possible cloud on the property as a result of the various clauses and conditions set forth in the agreement. In each sale Mr. Rubin showed the value of the homes and the value in cash after deducting therefrom the amount of mortgage each owed on the respective properties. Therefore, although the sales recite a cash consideration, no such cash consideration was actually made, as the method of payment of the difference on the respective properties was set forth in a separate agreement whereby Mr. Stern-berg was to give $50,000.00 worth of mortgages in payment of the $40,000.00 actual difference in the purchase price, there being a 20% discount on the value of the mortgage paper to be given. Mr. Womack signed a promissory note for $9,518.52, being the difference in the amount owed on the mortgage assumed on the Stern-berg house and the amount owed on the mortgage assumed by Mr. Womack.
All of these documents were signed by the parties in the presence of Mr. Rubin on November 29, 1960. The parties also signed an agreement, drawn by Mr. Rubin, which set forth an explanation of how the notes were to be paid and contained all other conditions and agreements made between the parties including those concerning the stereophonic equipment, swimming pool at the Sternberg residence, air conditioning units, and various conditions concerning the payments of the mortgage, terms of possession and the payment of taxes on the properties.
The record shows that when the parties met at the office of the notary, Mr. Womack saw for the first time the agreement which had been drawn by Mr. Rubin from information acquired from the agreement of November 15, 1960 and through conversation with Mr. Sternberg. Mr. Wo-mack stated the agreement was not in ac *125 cordance with the agreement he had made with Mr. Sternberg on November IS, 1960. After considerable discussion the parties reached a final agreement on all matters between them, which necessitated various changes being made in the written agreement. These changes were made on a carbon copy of the original agreement as well as on a separate paper which was introduced in evidence. Mr. Rubin did not make the changes by interlineations, as directed, for the reason as stated by him that it would look uncraftsmanlike and would be a neater job if he rewrote the agreement including all of the inter-lineations which the parties had agreed upon. The agreement as rewritten by Mr. Rubin was later signed by Mr. Womack. Mr. Sternberg refused to sign the same.
Mr. Rubin testified that the parties had reached an agreement and the only further step to be taken was for the inter-lineations to be made and initialed by the parties.
It is quite clear from Mr. Rubin’s testimony that an agreement had been reached on all matters. This is corroborated by the testimony of Mr. Womack and of Mr. Sternberg. There is additional evidence in the record by Mr. Rubin that after the conference had been concluded, the parties shook hands, stated that a deal had been made and sojourned to a local restaurant and proclaimed in front of friends that they had made a deal.
Mr. Rubin testified that the parties considered his request for them to return and initial the interlineations was an idiosyncrasy on his part and it was only at his insistence that both parties agreed to come back to initial the interlineations. This is borne out by the testimony of Mr. Womack. However, Mr. Sternberg testified that although an agreement had been reached, it was understood that the parties were to return, examine the inter-lineations, and initial them, and until such time as this was done there was no agreement.
After examining all of the evidence the Trial Court made the following findings of fact: That the signed agreement of November 29, upon which the inter-lineations were to be made, was an integral part of their negotiations and must be considered in regard to the transfer; that the initialing of the interlineations was not a condition of the agreement between Mr. Womack and Mr. Sternberg but was a formality insisted upon by the notary who was required to make the interlinea-tions ; that the true agreement between the parties was that signed by them on November 29, 1960, plus the interlineations which the notary was under duty to make. The Trial Court thus found that there was a valid binding agreement made between the parties and initialing the inter-lineations was not a condition to the validity of the agreement.
This Court is in agreement with the findings of fact by the Trial Court.
Having found there was a valid binding agreement made between the parties, consisting of the various signed documents and the interlineations made by the notary, and having found that initialing the inter-lineations was not a condition to the validity of the agreement, defendant’s specifications of error cited above as Nos. (1) (2) and (4) are readily disposed of.
With regard to the defendant’s third specification of error, that the Trial Court erred in allowing testimonial proof, over objection of counsel, of a verbal sale of immovable property, it is pointed out that testimony of proof in this case was not given for the purpose of showing verbal sale of immovable property but merely to show the parties had reached a full agreement concerning the documents signed and it was not necessary to initial those interlineations made after the signing of the documents but which were agreed on.
The side agreement entered into in Mr. Rubin’s office, upon which the *126 interlineations were made, was an agreement explaining the true consideration set forth in the deeds signed. It is well established under the authority of LSA-C.C. Art. 1900 that the true consideration for .a contract may be proved by parol evidence even though it is different from that recited in the agreement. See Stephens v. Anderson-Dunham, Inc., 234 La. 237, 99 So.2d 95, and the numerous cases cited therein. It has been further held by the Louisiana jurisprudence that “It is well ■settled that this Article of the Civil Code (2276) does not forbid the proving by parol evidence of a subsequent agreement to modify or to revoke a written agreement.” Salley v. Louviere, 183 La. 92, 162 So. 811. It is thus clear the Trial ■Court was not in error in permitting the introduction of parol evidence in this case.
There is no question the defendant .Sternberg breached the agreement. The ■evidence clearly shows that shortly after •a meeting on November 29 in the office of the notary public, the defendant Sternberg instructed the notary not to record the ■sales or complete the instruments and advised plaintiff that he would not go through with the deal. All of these facts were borne out by the testimony of defendant.
Under LSA-C.C. Art. 1926 if there is a breach of an obligation plaintiff is entitled to damages or specific performance, •or he may require the dissolution of the ■contract and be given damages. The plaintiff was thus entitled to have the contract dissolved and to have damages.
Plaintiff seeks damages in the amount of $72,993.82. Of this amount $13,500.00 was the amount claimed by the plaintiff as the loss of profit on the sales price of the Womack home, $7,500.00 was claimed as the loss of profit on the resale of the Sternberg house which was to be purchased by the plaintiff Mr. Womack, $10,-■000.00 was claimed as the loss of the value ■of the discount which plaintiff was to receive had he obtained the $50,000.00 worth •of mortgage paper to be given him by the defendant, and $41,993.82 was claimed as the loss of interest which plaintiff suffered by not having obtained the mortgage papers. The Trial Court grantee! the plaintiff damages in the amount of $21,000.00 allowing the claim of $13,500.00 and of $7,500.00, but rejecting the other demands of the plaintiff.
The Trial Court concluded that the architect’s fee of $125.00 claimed by plaintiff was not proved and the claim was denied. This Court agrees with that finding.
The plaintiff introduced the testimony of Mr. Julius Bahlinger, a real estate appraiser and an expert in the field, in regard to the loss of profit on the sale of plaintiff’s house. Mr. Bahlinger testified that he appraised the plaintiff’s house at $61,500.00, which figure, according to the Trial Judge, was substantiated by plaintiff’s own cost figures of $61,356.34. It was thus shown that the plaintiff lost a profit of at least $13,500.00 which he could have made had he been able to sell the house for $75,000.00. This is a provable item of damages and should be allowed.
With regard to the loss of profit on the resale value of Mr. Sternberg’s house, the evidence shows that after breaching the agreement with the plaintiff the defendant sold his house to a Mr. Presley for $42,500.00. The record shows that as a part of his business as a contractor plaintiff buys homes, renovates them while living in them and sells the same for profit. Therefore, the Trial Court allowed plaintiff an award of $7,-500.00 measured by the loss of profit he could have obtained had he acquired defendant’s house. It is the opinion of this Court that this is a justifiable award.
The Trial Court held, with regard to the other item of damages, that the claimed loss of discount and loss of interest were speculative insofar as they exceeded the purchase price of plaintiff’s house. The value of the discount and *127 interest on mortgage paper of this type is speculative and cannot he measured with any degree of certainty and should thus be disallowed.
For the foregoing reasons, the judgment of the Trial Court is affirmed.
Affirmed.