172 So.2d 683

**Floyd W. WOMACK, Jr.**

v.

**Manfred STERNBERG.**

No. 47270.

Feb. 23, 1965.

Rehearing Denied March 29, 1965.

Henican, James & Cleveland, C. Ellis Henican, C. Ellis Henican, Jr., New Orleans, Arthur J. Cobb, Baton Rouge, for defendant-applicant.

Chapman L. Sanford, George A. Bourgeois, Baton Rouge, for plaintiff-respondent.

McCALEB, Justice.

This is a suit for damages resulting from the breach of an exchange contract. Originally, the plaintiff (Womack) sought declaratory relief. After rendition of judgment in his favor, he filed amended pleadings praying for money damages from defendant and was awarded $21,000 by the trial judge. On appeal, the judgment was affirmed by the Court of Appeal, First Circuit. See Womack v. Sternberg, 162 So.2d 119. Sternberg then applied for a writ of review, assigning certain errors allegedly committed by the Court of Appeal respecting his liability and also as to the damages awarded. Certiorari was granted but our review was limited "to the items of damages assessed by the Court of Appeal against the defaulting party." Accordingly, our inquiry is restricted to a consideration of the quantum of damages, if any, to which Womack is entitled as a consequence of Sternberg's breach of contract.

On November 15, 1960, Womack and Sternberg agreed to exchange their residences situated in East Baton Rouge Parish. This contract provides:

"* * * Womack agrees to buy the house of Sternberg at 3087 East Lakeshore Dr. for $35,000 and Sternberg agrees to buy the house of Womack at 2910 Murphy Dr. for $75,000.[1] The difference of $40,000 is to be paid in $50,000 worth of first mortgage paper on colored houses that belong to Sternberg. This $50,000 less a 20 per cent discount makes up the difference of $40,000."

On November 29, 1960, the parties met at the office of a notary public to execute formal acts of sale of the premises. The occurrences at this meeting are recounted in detail in the opinion of the Court of Appeal and need not be repeated here.

1. This figure included certain furniture, furnishing and fixtures.

Suffice it to say that a day or two later Sternberg, taking the position that there was no valid, enforceable agreement between the parties, refused to carry out the contract. The trial court and the Court of Appeal repudiated this defense and held that Sternberg actively breached the contract. On December 21, 1960, less than a month after the breach, Sternberg agreed to sell his house to a Dr. Presley for $42,500 and the act of sale, in conformity therewith, was passed in September, 1961.

■ As a result of Sternberg's breach, Womack claimed numerous items of damages but all were denied by the trial court and the Court of Appeal, except two items which totaled $21,000.[2]

The first item of damages awarded plaintiff was $13,500 for loss of profit on the exchange of his house having a contractual value of $75,000. A real estate appraiser, Mr. Julius A. Bahlinger, III, testifying for plaintiff, valued the Womack home at $61,500 as of May, 1962 when the case was tried, approximately a year and six months after the date of Sternberg's breach of the contract. The district court accepted this appraisal and found that Womack had lost a profit of $13,500, the difference between $75,000 and $61,500, as a result of Sternberg's breach.

The other item of damages awarded Womack was $7500 for loss of profit on the resale value of Sternberg's house. The district judge reasoned that, since Sternberg sold his home (which was valued at $35,000 in the exchange agreement) for $42,500 a short time after the breach, Womack was entitled to receive the difference between the two amounts, or $7500.

The Court of Appeal subscribed to both awards.

In this Court, counsel for Sternberg contend that the Court of Appeal erred in treating the exchange transaction as two isolated sales. Further, they say that, since the parties intended to exchange assets of equal value and assigned the values thereof in their written contract, Womack has suffered no damage whatever as he has been allowed to keep a thing having the same value of the things he would have received in the exchange.

We agree with counsel's position that the contract of exchange was a single conventional agreement and should be treated as such. But we reject their contention that, since Womack retains his contractually valued $75,000 home, he cannot recover the profit he has actually lost by reason of the breach by showing that his home had a market value at the time of the breach of

2. The judgment of the Court of Appeal rejecting Womack's claim for other items of damages is final since he did not apply to this Court for writs. Accordingly, the amount of recovery for the items of damages awarded in the case can never be increased to the prejudice of relator, Sternberg. See Pennington v. Justiss-Mears Oil Company, 242 La. 1, 134 So. 2d 53 and authorities there cited.

less than the combined market value of the Sternberg house and mortgage notes which he was to receive in exchange.

 Except in certain instances inapplicable to this case, the rules governing the contract of sale apply to the contract of exchange. Article 2667 of the Civil Code so provides and further declares, in exchanges, " \* \* \* each of the parties is individually considered both as vendor and vendee." But the circumstance that the parties to an exchange contract are considered both as seller and buyer does not warrant the resolution that there are two separate contracts. On the contrary, there is but one agreement to be fulfilled, i. e., the conventional exchange of the things even though the parties act as to each object in different capacities.

Article 1930 of the Civil Code stipulates that the obligations of contracts extend to whatever is incident to them and a defaulting party is liable " \* \* \* to the payment of the damages, which the other party has sustained \* \* \*". And Article 1934 sets out the measure of damages for breach of contract thus:

"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the *loss* he has sustained, and the *profit* of which he has been deprived, under the following exceptions and modifications:

"1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were *contemplated,* or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By *bad faith* in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a *designed breach* of it from some motive of *interest* or *ill will*.

"2. When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been *foreseen* at the time of making the contract, but also to *such* as are the *immediate and direct consequence of the breach of that contract*; but even when there is fraud, the damages cannot exceed this. \* \* \*" (Italics ours).

The rule of law as to measure of damages is well stated by Professor J. Denson Smith in his comprehensive article entitled "Recovery of Damages for Non-Delivery and Eviction in Louisiana—A Comparison", 17 La.Law Rev. 253–272 at pages 255, 256, as follows:

" \* \* \* In the ordinary case, the award to the buyer will be based on the difference between the contract

price and the actual value of the thing, determined by the market price, whether or not he repurchases on the market. [E. B. Williams & Co. vs. Bienvenue, 109 La. 1023, 34 So. 63 (1903); Gallaspy vs. A. J. Ingersoll & Co., 147 La. 102, 84 So. 510 (1920); Burglass vs. J. C. Healy Co., 159 La. 393, 105 So. 384 (1925); Pepper vs. Katz, 77 So. (2d) 891 (La.App.1955). See also 3 Pothier Oeurves n. 7 (2d. ed. 1861).] This difference is frequently considered a loss sustained by the buyer, but it is actually a gain of which he is deprived by the breach. [Kohlman vs. Witherell & Dobbins Co., 155 La. 57, 98 So. 756 (1924.)] It represents what the thing is worth over and above the contract price, and therefore constitutes a profit the buyer would have made on the transaction. Since such an award represents the value of the promised performance, its extent is to be determined as of the time the performance was to be rendered. Hence it is that a buyer may not increase the amount recoverable against a defaulting seller by postponing his demand for performance until the price has risen. [Burrus Mill & Elevator Co. vs. Eunice Grain Co., 182 La. 475, 162 So. 48 (1935).] To permit him to do so would be contrary to the principle that permits recovery of only those damages that were within the contemplation of the parties at the time of contracting. [Friedman Iron & Supply Co. vs. J. B. Beaird, Inc., 222 La. 627, 63 So.2d 144 (1953).] For the same reason, damages are not to be measured as of the time suit is filed or the case is tried. [Ibid.; Kory vs. Layman, 108 La. 247, 32 So. 441 (1902)]." Authorities cited in brackets are contained in footnotes to the text.

In Friedman Iron & Supply Co. v. J. B. Beaird Co., 222 La. 627, 63 So.2d 144 (1953), the most recent decision of this Court dealing with quantum of damages allowable for loss of profit for breach of a contract of sale, the Court, on rehearing, said:

" * * * This court has on numerous occasions pointed out that the measure of damages for the breach of a contract of sale, where no fraud is shown, is the difference between the contract price and the market price of the goods on the *date of the breach*. See Interstate Electric Company v. Frank Adam Electric Company, 173 La. 103, 136 So. 283 and the authorities cited therein to that effect. This rule of law is based on solid grounds because neither a plaintiff nor a defendant should be permitted to select the market value of a date different from that on which the contract was breached for the purpose of determining whether any loss was suffered or profit deprived to the detri-

ment of either party. * * * If such were to be used as a criterion, the rights of the parties would depend on conditions arising at an uncertain future date. * * * " [3]

■■ Applying the above cited general rule relative to breach of sales contracts to the contract of exchange, it is readily seen that the damages due to the creditor for the profit of which he has been deprived by reason of the breach is and can only be one item of damage—viz., the difference between the market value of the thing he was to give and the thing or things he was to receive in exchange. Viewed in this light, it is apparent that the lower courts erred in ruling that Womack suffered loss of two items of profit in the case at bar. This is because the trade between the parties of their respective properties and other movables of value, which were stated to be equivalent ($75,000 each) in the contract, could not result in a profit to either one of the parties unless the thing or things given on the one hand were less in value than the thing or things received on the other. Therefore, to determine the profit which Womack would have made but for the breach, it was necessary to ascertain the market value of his home at the time of the breach and the market value of Sternberg's home and the mortgage notes which Womack was to receive in the trade. If the combined value of Sternberg's home and the mortgage notes exceeded the value of the Womack home, then whatever this difference may be represents the profit of which Womack has been deprived as a consequence of the breach.

■■ No evidence was adduced in the case at bar to establish these market values at the time of the breach and it was error for the lower courts to consider the expert testimony of Mr. Bahlinger that the Womack home had a market value of $61,500 in May of 1962 (the time of the trial) in computing the profit Womack lost as a consequence of the default. Indeed, whatever profit Womack may have lost by reason of the breach cannot be measured without proof of the market value of his property at the date of Sternberg's default, and proof of the market value of the mortgage notes and Sternberg's house at such date, because the general principle is that the measure of damages for breach of an obligation is the sum which will place the plaintiff in as good a position as he would have been if the obligation had been fulfilled. 3 Williston on "Sales", Sec. 599, page 293.

However, it is the contention of Womack's counsel, which the trial judge up-

3. The Civil Code does not make any distinction between movables and immovables with respect to the damages due for breach of contract of sale and there appears to be no good reason why the jurisprudence respecting movables should not apply to all kinds of property. See Du Bell v. Union Central Life Ins. Co., 211 La. 167, 29 So.2d 709.

held, that Sternberg was in bad faith and that, this being so, Womack is entitled to recover unforeseen damages, as well as those which might have been foreseen by the contracting parties at the time of the making of the contract, under the specific provisions of Article 1934(2) of the Civil Code. From this premise it is professed that the unforeseen loss of profits are to be measured by the market value of Womack's property as of the date of trial because, since his property had appreciably declined in value at that time, this represents the whole profit he has lost by reason of the breach.

We find this proposition untenable. In the first place, we entertain grave doubt as to the correctness of the trial judge's resolution that Sternberg was in bad faith as defined by Article 1934(1) of the Civil Code.[4]

■ Moreover, assuming for purposes of discussion that Sternberg was in bad faith, we would not be justified in measuring Womack's damages for loss of profit

as of the time of trial. For, whereas Article 1934(2) renders a bad faith debtor liable for damages which were unforeseen, as well as those which were foreseen at the time of the making of the contract, it restricts recovery to those damages "as are the *immediate* and *direct* consequence of the breach * * *". It is plain that the direct and immediate profit, if any, that Womack lost as the consequence of Sternberg's breach was fixed and ascertainable at the date of the breach. Indeed, the damages recoverable for loss of profits are not unforeseen; such damages are clearly within the contemplation of the contracting parties. In these circumstances, such damages must be fixed as of the date of the breach. To hold otherwise would, as stated in Friedman Iron & Supply Co. v. J. B. Beaird Co., *supra*, "leave the rights of the parties uncertain and encourage litigants to jockey for a trial on a date when the market was favorable."

For the reasons assigned, the award of damages made by the trial judge, which was

---

4. The Article states "By bad faith * * * is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will."
The trial judge, in finding that Sternberg was in bad faith, observed: "While defendant's excuse was that his wife did not like plaintiff's home or that plaintiff gave him a hard time, the real reason * * * for his failure to perform * * * lies in the fact that defendant wanted to live in Jefferson Place, and his desire in this regard overcame his usually astute business acumen." We gather from this statement that the judge felt that Sternberg's desire to acquire a home in Jefferson Place led him to make an unprofitable deal from which he later recanted. But this is not necessarily bad faith; it is a mere breach of faith in not complying with the contract, which is true of all broken promises; the proof is far from certain that Sternberg's refusal to comply with the contract was a *designed* breach "from some motive of interest or ill will" as specified by Article 1934 (1).

affirmed by the Court of Appeal, is annulled and set aside and the case is remanded to the district court for determination of the quantum of damages in accordance with the views herein expressed. Respondent, Womack, is to pay all costs in this court; assessment of other costs is to await final disposition of the case.

HAMITER, J., dissents, being of the opinion that the judgment of the Court of Appeal (as to the question of quantum) is correct and should be affirmed.

HAWTHORNE and HAMLIN, JJ., dissent with written reasons.

HAMLIN, Justice (dissenting):

This case involves exceptional circumstances, and no case cited in the majority opinion nor in the dissenting opinion has the same or a similar situation involved.

I have taken the following factors into consideration:

1. The prices for the houses set out in the agreement are firm prices;

2. The value of the mortgage paper is a firm value;

3. The trial court, who saw and heard the witnesses and noted their demeanor on the stand, found bad faith on the part of Sternberg;

4. The majority opinion merely entertains "grave doubt" as to the trial judge's resolution that Sternberg was in bad faith.

I believe that, in view of the exceptional circumstances of this case, the result reached by the Court of Appeal is correct.

I respectfully dissent.

HAWTHORNE, Justice (dissenting).

I disagree with the views expressed in the majority opinion for the determination of the quantum of damages on the remand of this case.

First I cannot agree that it was error for the Court of Appeal to treat the exchange transaction as two sales. That is the recognized theory of exchange in the civil law.

Article 2667 of the Civil Code, which concerns the exchange contract, provides:

"* * *

"And in this * * * contract *each* of the parties is individually considered *both as vendor and vendee.*" (Italics mine.)

Pothier in his treatise on the contract of sale describes exchange as follows:

"The contract of exchange bears some resemblance to the contract of sale. * * * The principal difference is, that, in the contract of sale, we distinguish the thing and the price; we distinguish between the contracting parties, one of whom is the seller and the other the buyer. On the contrary, in the contract of exchange, each of the things is both the thing and the price;

each of the contracting parties is both seller and buyer * * *." Pothier, Treatise on the Contract of Sale, Cushing's tr. 1839, no. 620, p. 373. See also 2 Planiol, Treatise on the Civil Law, Eng. tr. 1939, no. 1658, p. 1.

Article 1934 of our Civil Code provides that "Where the object of the contract is *any thing but the payment of money,* the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived * * *". In this case by breaching the contract of exchange Sternberg breached two obligations which did not contemplate the payment of money, his obligation as vendor to deliver his house and the mortgage paper to Womack, and his obligation as vendee to accept delivery of Womack's house. It was entirely proper under our civil law to consider him as a defaulter in each of these roles, and it is more appropriate to do so in this case because the contentions between the parties are now essentially in regard to the houses exchanged; damage resulting from the failure to deliver the mortgage paper is not an issue.[1]

Second I cannot agree that the damages which Womack has sustained by the breach should be measured by the difference in the market value of the things exchanged at the time of the breach. This method of measurement may allow Womack to recover a profit which is unjust under the civil law, and it may deprive him of a profit he is justly entitled to as an item of damages. It may allow Womack to recover a profit which is unjust because in this case he argues to the court that he took advantage of Sternberg in this bargain inasmuch as the Sternberg house was worth a great deal more than the value of $35,000.00 stated in the exchange agreement, and that he is entitled to his "bargain" as damages. If he did in fact take advantage of Sternberg in this manner, the method of measuring the damages set out in the majority opinion will reflect that "loss of bargain" of Womack.

It has long been settled in this state that our courts will not entertain any such argument for the recovery of damages against a defaulting party to a contract of sale. In the case of Burrows v. Peirce, 6 La.Ann. 297, where damages against a defaulting vendor were sought on the basis that the vendee had gotten a great bargain, the court rejected such a profit as a just claim for damages:

"It is true, the principles of speculation in this trading community give countenance to the rule claimed by * * * the vendee,

1. We granted writs "Limited to the items of damages assessed by the Court of Appeal against the defaulting party." The only *items assessed* were in regard to the two houses exchanged. The presentation of the case in this court has been limited to these two items.

that he should recover the value of the property which was fifty times the price paid for it. But speculation should not mislead us from the true principles of the contract of sale. It is the rule of morality, favored as far as possible by both law and equity, that the buyer should give the full value of the thing purchased and seek to acquire it for no less; and the seller should dispose of it for its fair value and seek for no more; and that the only basis of the transaction should be that the property and its use is more convenient and useful to the purchaser than the money and its interest, and *vice versa,* that the money and its interest is more useful to the seller than the property. Keeping these principles in view, if from any cause without fault on either side, the sale is annulled, the price paid should alone be restored. *Damages indeed may be given, but they must grow out of other circumstances than that the purchaser got a great bargain or made a fine speculation out of the vendor."* (Italics mine.)[2]

The rule of the above case is well founded in the civil law. See Pothier, op. cit. supra, nos. 234, 242, pp. 142, 149. I am of the firm opinion that it should not now be rejected and thus make of this court of jus-

tice a vehicle for Womack to realize the fruits of his sharp practices as damages.

On the other hand the measurement for damages in the majority opinion may well deprive Womack of a profit which has always been recognized as legitimate damages in the civil law. If the Sternberg house increased in value after the contract was made, that increase is properly a profit of which Womack has been deprived. See 1 Pothier, Treatise on the Law of Obligations (Evans' tr. 1826), no. 161, p. 81. As I understand the majority opinion its views for measuring the damages on the remand may well not allow for this well-recognized element of damages. If Womack's house decreased in value after the contract, that should properly be considered also as a loss compensable as damages. See Civ. Code Art. 2565.

Third, I cannot agree that there is any doubt as to Sternberg's bad faith in the breach of this contract. He attempted to avoid the inference that his breach was from "some motive of interest or ill will" (there was nothing whatever to prevent his carrying out the agreement in good faith) by contending that he considered himself not yet bound so that he could withdraw

2. Even one who breaches in bad faith should not be liable for such an unjust profit of which the plaintiff has been deprived by the breach. Assessing such a profit as damages would amount to making the defaulter liable for punitive damages which are not permitted in the civil law. See Art. 1934(2); Planiol, op. cit. supra, no. 247, p. 149; McCoy v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383, 85 A.L.R. 1147; Vincent v. Morgan's Louisiana & T. R. & S. S. Co., 140 La. 1027, 74 So. 541.

from the agreement. This contention as to his state of mind is clearly refuted by the evidence in this record as to his statements to witnesses that he and Womack had exchanged houses and by the fact that he and Womack celebrated the completion of their agreement in the presence of others at a restaurant after the negotiations were ended. I am in thorough accord with the finding of the district court that he breached this contract in bad faith.

Fourth, I cannot agree that the district judge ought to be restricted on the remand to measuring the damages at the time of the breach. Sternberg, because of his bad faith, is liable for all damages which are the immediate and direct consequence of the breach, unforeseen as well as foreseen. A continuing increase or decrease in the value of the houses exchanged down to the date of trial might not be assessed against a good-faith defaulter because this circumstance might not be contemplated by the parties at the time of contracting. One who breaches in bad faith ought not, however, have the benefit of such a limitation on the general rule of damages by which the plaintiff is placed in as good a position as he would have been if the obligation had been fulfilled.

Now if the obligation had been fulfilled in this case, Sternberg would have been the owner of Womack's house at the time of the trial and Womack would have been the owner of Sternberg's house at the time of the trial, so that to compensate for his bad-faith breach, the condition of things at that time ought to be considered in putting Womack in the same condition he would have been in if the contract had been carried out. In my opinion the trial court was fully justified in measuring the damages at the time of the trial in this case.

The courts of France, which have substantially the same general rules to guide them in assessing damages as we have (see Arts. 1149 et seq., French Civil Code), have wisely recognized that the *time* for evaluating the damages should largely be left to the discretion of the trier of fact so that a time can be selected which will best result in a *whole* reparation of the prejudice caused by the breach. The annoted French Code reveals:

The Court of Cassation, considering that the fixing of the indemnity is a point of fact left to the sovereign appreciation of the judges below, permits them to calculate the damage, according to the circumstances of the case, either on the day of the decision, or on the day when the prejudice was experienced by the creditor. The judge will regulate it on the day of his decision when, for example, the works of reparation will have augmented in price between the moment of the damage and that of his decision. 3 Fuzier-Herman, Code civil annoté (1936), Art. 1149, n. 9, p. 268.

The view of the majority in this case that in all cases of breach of a contract of sale damages must be measured on the *date of the breach* has no basis in our Code or in the civil law. It may well be that in the majority of cases the damages ought to be measured at the time of breach because the plaintiff thus will be put in the situation in which he would have found himself if the execution had taken place. But it has been recognized by the French authorities that circumstances can alter the time for measuring damages.

According to Dalloz, the whole indemnification to which the creditor has a right should consist of the payment of the monetary equivalent of the damage *on the day of its reparation*; it is then the business of the judge, called upon to fix the indemnity due for non-delivery of goods, to take account of the rise of currency at the date of the judgment, under the influence of monetary variations. Dalloz, Code civil annoté (1958), Art. 1149, n. 4, p. 458.

The whole matter is clearly stated by Planiol and Ripert in their general discussion of the time of evaluation of damages:

The prejudice in principle ought to be evaluated on the day when it was experienced by the creditor because this is the means of putting him back exactly in the situation where he would have found him-self if the execution had taken place. However, when the inexecution has entailed a prejudice which increases progressively by reason, for example, of the constant elevation of the cost of materials or of the work which would increase the loss suffered by the creditor, he can obtain an indemnity established by evaluating the prejudice on the day of the decision. By that alone the creditor obtains in such a case a whole reparation. That solution becomes the rule in a period of economic and monetary instability. There are cases, however, when that rule would be discarded because the reason of its being would no longer be met. Thus when the creditor has proceeded to replacement before the decision of the court, he has a right only to the price which he had to disburse; the prejudice is definitely fixed at that moment. The judges below sovereignly set the date on which the prejudice ought to be evaluated. 7 Planiol et Ripert, Traité pratique de droit civil français (1954), n° 856, p. 185. See also 2 Ripert et Boulanger, Traité élémentaire de droit civil de Planiol (4ᵉ éd. 1952), n° 744 bis, p. 260.

In a lengthy doctrinal discussion of this matter it has been pointed out that the judges of France have taken advantage of the great liberty which the general laws on damages give them, to measure the damages in each case at the time which will

best wholly repair the prejudice, and they have more and more considered increases and decreases in value down to the day of reparation when they concluded that it was that time of evaluating the damages which wholly compensated for the prejudice. Derrida, L'évaluation du préjudice au jour de sa réparation, Jurisclasseurs périodiques (Semaine juridique) 1951, I, 918. Restricting our district judges, as does the majority opinion in this case, to measuring the damages in the breach of sales contracts at the same time in all cases does not, in my opinion, serve the purpose of damages. Our judges ought also to have the same great liberty as the French judges to decide the matter as the circumstances of each case require.

A simple illustration will demonstrate that in some cases it may be impossible to measure the damages on the day of the breach because the circumstance for their measurement arises *after* the breach. A contracts to purchase a horse from B for $300.00, and B breaches the contract by failing to deliver the horse. A cannot find another horse of like quality until three months after the breach at a price of $350.00. There is no question that A has sustained a loss of $50.00 by having to pay that amount over and above the price of the horse he had purchased from B. Yet if A is restricted to the date of the breach,

the damages could not thus be measured because on that day A did not even know of the existence of the other horse. The proper time for measuring the damages, of course, is at the time of the new contract.

In the case of bad-faith breach, it should be obvious that the unforeseen damages will more than likely occur *after* the breach. One of our own cases makes clear that the time for measuring damages in a bad-faith breach of a sales contract may be beyond the date of the breach. Tulane Educational Fund's Adm'rs v. Baccich & De Montluzin, 129 La. 469, 56 So. 371. In that case the plaintiff had agreed to purchase certain realty from one who could not deliver the property according to his promise because he was not the owner. The plaintiff after negotiation was able to purchase the property from the true owner, but at an increased price. In that case the defendant contended that he was in good faith, that he could not be expected to foresee that the plaintiff would have to acquire the property from the true owner at an advanced price, that the damages had to be measured on the day of the breach, and that there were no damages because the market price on that date was the same as the contract price. This court held that the defendant was in bad faith and was liable even for damages not foreseeable, and measured the damages

*at the time* the plaintiff purchased the property from the true owner—a time *after the breach*.

The majority opinion infers that measuring the damages at the time of trial in this case would be contrary to the rule that only those damages are recoverable which are the immediate and direct consequence of the breach, and would "leave the rights of the parties uncertain and encourage litigants to jockey for a trial on a date when the market was favorable", contrary to the Friedman case. I am of the opinion that the words "immediate and direct" in Article 1934 pertain to causation and not necessarily to time. There might well be a damage directly caused by the breach which occurs at a time somewhat remote from the time of breach. I am still of the opinion that the Friedman decision was wrong and the reasons for it unsound, but regardless of this it would not be controlling in this case because the court there was speaking only in terms of good faith.

For the reasons stated hereinabove I think the case should have been remanded to allow Womack to show (1) the increase, if any, in the value of the Sternberg house between November 15, 1960, the date the agreement was made, and May 16, 1962, the trial date in the lower court, and (2) the decrease, if any, in the value of Womack's house between those dates.