REID, Judge.
Plaintiff in this suit filed a petition for a foreclosure by ordinary process against the defendant James Earl Humble. The suit is based on two promissory notes, one in the amount of $1044.48 payable to the •order of petitioner in equal consecutive monthly payments, the first due on or before September 25, 1963 in the amount of $43.52 with consecutive monthly payments on the 25th day of each month thereafter, and the second note in the amount of $833.-76 dated September 3, 1963 payable to the •order of petitioner in equal monthly consecutive installments, the first due on or before September 25, 1963 in the amount of $34.74 with consecutive monthly payments thereafter on the 25th day of each month.
These notes were signed by the defendant and the first note in the amount of $1044.48 secured by a chattel mortgage on the following described property, to-wit:
1 Mercury Motor, 20 horsepower, Motor No. 1560232 and Model No. 1963 new; 1 Delcraft Dilly Trailer No. 11527-DC-14 — 1963; 1 Aluminum Delcraft Boat, 14-18 Deluxe, 36 inch bottom, Boat No. 11652.
The second note was secured by a chattel mortgage on the following described property, to-wit:
1 16 foot Delcraft boat Cabinette No. 1857
1 Delcraft heavy duty trailer No. 13738
Photostatic copies of the notes are annexed to the petition together with certified copies of the acts of chattel mortgage.
Plaintiff asked for a judgment against defendant James Earl Plumble in the sum ■of $882.62 with 8% interest from April 22, 1964 and 25% attorneys fees, and on the second note in the sum of $707.01 with 8% interest from April 22, 1964 and 25% attorneys fees and recognition of their chattel mortgages on the personal property described in the mortgages and ordering the property sold according to law and that out of the proceeds credited “pro tanto” on the judgment and the balance to be executory against any and all other property of the defendant.
Defendant filed an answer of general denial. He subsequently filed an amended answer in which he alleged that on October 22, 1964 he filed a petition in bankruptcy being No. BK-64 — 321 and that he would be discharged after due proceedings by the Bankrupt Court. He further alleged that the indebtednesses which were the basis of this suit were listed on the bankruptcy schedules in Schedule A-2 of the petition, and the property described in this petition listed in Schedule B-2. Subsequently the plaintiff filed an amended and supplemental petition in which he alleged that the defendant since the execution of the mortgages and notes sued on, and without the authority or consent of the plaintiff, had done away with, disposed of or wrongfully sold or transferred or appropriated the chattels described in the respective chattel mortgages.
Defendant filed an answer to the supplemental and amended petition in which he denied the allegations, and then filed a third party petition against one Cecil Chapman, d/b/a Chap’s Bait House in which he sets out the various transactions by which he purchased the chattels covered by the mortgages at different times from said Cecil Chapman. He further alleged that said properties were listed in the said Bankruptcy Schedule and that the various transactions with Cecil Chapman, said Chapman was acting as the agent for the X-L Finance Company, Inc. He prays for judgment against Chapman for whatever judgment is rendered against him.
The defendant then filed a second amended answer in which he changed his answer in Paragraph 2 to allege that he had signed certain promissory notes with the plaintiff but denied lack of information and all other allegations of Paragraph 2 of plaintiff’s petition.
*885 Cecil Chapman, d/b/a Chap’s Bait House ■filed an answer to the third party demand in which he denied he was the agent of plaintiff.
Defendant filed a third amended and ■supplemental answer in which he reiterated all the facts and allegations contained in his previous answers and further alleged that when the second trade was made by which be executed the second note and chattel mortgage covered in this suit Mr. James B. Tessier, manager of plaintiff concern, agreed that the first note and mortgage alleged in this petition would be cancelled. He further alleged that plaintiff through its manager knew at all times of the intentions -of the parties that there would be a mortgage on only one boat and trailer.
The case was duly tried and the Lower Court for oral reasons dictated into the record rendered a judgment against the defendant for the amount of the two respective notes with recognition of the mortgage on the property covered by the second chattel mortgage with an order for the property to be sold by the sheriff according to law and the proceeds credited “pro tanto” on the judgment, and that the judgment be executory for the balance if any may be due. He further dismissed the third party demand, James Earl Humble against Cecil Chapman, at the cost of said Humble. From this judgment the plaintiff has brought an appeal to this Court.
The Trial Judge in his oral reasons for judgment found the following facts which we believe are sustained by the evidence, to-wit:
“The transactions leading up to the execution of this mortgage and note were as follows: Mr. Humble had in his possession a ten horsepower motor of some description, and he also happened to be a customer of Chap’s Bait Shop. He entered into negotiations with Mr. Cecil Chapman, who is a third party defendant herein, for the purchase of the twenty horsepower Mercury motor, and the Dilly trailer and the aluminum Del-craft boat.
After writing up the transaction at Mr. Cecil Chapman’s place of business Mr. Chapman along with Mr. Humble presented himself to Mr. Jack Tessier, the manager of the plaintiff finance company, and after familiarizing himself with all the details of the transaction, he loaned the money which is represented by this note and mortgage sued upon herein to the defendant in order that he could pay Mr. Chapman.
The note was secured by a mortgage on the above referred to property and was in the original sum of $1044.48 and is more fully described in Paragraph 2-A of plaintiff’s petition.
It is equally clear thereafter that Mr. Humble was not satisfied with his boat and trailer so he traded the boat and trailer to Mr. Chapman for a sixteen foot Delcraft boat and one Delcraft heavy duty trailer. Mr. Chapman again wrote up the transaction including all the details such as the trade-in of the Delcraft Dilly trailer and the aluminum boat on the larger boat and trailer, and he took these papers down to the finance company along with his son and another gentleman, Mr. Roy Harvey, to get it financed.
The case is further complicated by the fact that after the above transactions were completed Mr. Humble found out the twenty horsepower motor was not powerful enough for the larger boat and made a trade with Mr. Chapman for a thirty-five horsepower motor. In other words, the thirty-five horsepower motor, which the evidence reflects was equal in value to the twenty horsepower motor, was exchanged by the parties.”
Plaintiff testified that he received a notice from the Bankrupt Court but made no appearance and there is nothing in the record to show of any proof of claim filed, or any steps taken in the Bankrupt Court to have the property seized and sold or disclaimed where he could foreclose on it. The *886 foreclosure proceedings do not ask for a sequestration or seizure of the property immediately, but is an ordinary process.
Mr. Tessier was rather vague in some of his testimony concerning the conversation about the various trades but the testimony of Mr. Chapman and the defendant Humble, his son named Earl Humble Jr. and Mr. Harvey is that Mr. Tessier was fully informed of all the details of the transaction and made no effort to take possession of the property or to have it seized and stored at any time. He stated that he was willing for it to be sold so long as he got his money.
We do not see how plaintiff can contend that the defendants sold or disposed of in any way the property with the intent to defraud plaintiff. The property was taken evidently in the possession of Mr. Chapman, the party who originally sold it. Both acts of chattel mortgage are signed by James B. Tessier, the manager of plaintiff company as a witness. If he was going to complain about the disposition of the property covered by the first mortgage he would certainly have objected to the transaction whereby the property covered by the first chattel mortgage was traded in on the purchase of the property covered by the second chattel mortgage.
There is no question but what a judgment debtor who has been adjudicated a bankrupt, upon receiving discharge would be released from all provable debts and claims against him personally, and discharge related back to the date of adjudication.
Our Brothers of the Third Circuit in the case of Louisiana Machinery Company v. Passman, La.App., 158 So.2d 419, held as follows:
“11 U.S.C.A. § 35, provides that a discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part. There are certain exceptions made in this section which are not applicable to the instant case.
11 U.S.C.A. § 103, provides which debts may be provable.
8B C.J.S. Bankruptcy § 563, page 38, et seq., provides in part:
‘The effect of the discharge on a judgment against the bankrupt based on a provable claim is the same as its effect on the claim itself. If the judgment is on a claim not excepted from the operation of the discharge, the discharge will bar personal enforcement of the judgment against the bankrupt, or against any property of the bankrupt on which it was not a lien.
‘In determining whether or not a provable debt of the bankrupt is dis-chargeable in bankruptcy, the reduction of such liability to a judgment does-not change its nature or character. Accordingly, the discharge operates to relieve the bankrupt of personal liability on all judgments recovered against him based on provable obligations not excepted from the operation of the discharge, * * ”
Counsel for plaintiff argues that verbal testimony cannot be offered to vary or contradict the terms of a written instrument in absence of fraud, error or mistake, or if it is not contemporaneous and not naturally includable therein. He cites-certain cases in support of this document. We recognize this doctrine but we do not think that it is applicable to facts in this case. There is no question but what parole evidence is admissible to prove a subsequent agreement to modify or revoke the written-agreement. See Womack v. Sternberg, La.App., 162 So.2d 119, Stephens v. Anderson-Dunham Incorporated, 234 La. 237, 99 So.2d 95, Salley v. Louviere, 183 La. 92, 162 So. 811.
For the foregoing reasons we find the judgment of the Lower Court to be correct, and it is therefore affirmed.
Affirmed.